**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 9 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JONATHAN AVERY,

      Defendant-Appellant.

No. 00-3262

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 00-CR-10036-MLB)**

---

Timothy J. Henry, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with him on brief), Wichita, Kansas, for Defendant-Appellant.

Randy Hendershot, Assistant United States Attorney (D. Blair Watson, Assistant United States Attorney, and Jackie N. Williams, United States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff-Appellee.

---

Before **EBEL**, Circuit Judge, and **HALL**[*] and **BRORBY**, Senior Circuit Judges.

---

**EBEL**, Circuit Judge.

---

[*]The Honorable Cynthia Holcomb Hall, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

On March 7, 2000, a federal grand jury issued an eight-count indictment against Defendant-Appellant Jonathan Avery. Count 1 charged Mr. Avery with possessing with the intent to distribute a "mixture or substance" containing thirteen grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Count 2 indicted Mr. Avery for possessing with the intent to distribute approximately twenty grams of mixture or substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1), and Count 3 alleged that Mr. Avery possessed with the intent to distribute approximately four grams of a mixture or substance containing cocaine base, also in violation of § 841(a)(1). Counts 4, 5, 6, 7, and 8 of the indictment all accused Mr. Avery of having "knowingly possessed" specific firearms "during and in relation to a drug trafficking crime," in violation of 18 U.S.C. § 924(c)(1).

A few months after being indicted, a federal jury convicted Mr. Avery on all counts. The United States District Court for the District of Kansas subsequently sentenced Mr. Avery to a total of 198 months in prison and a total of four years of supervised release, with some of the sentences on the individual counts running concurrently, and some of the individual sentences running consecutively.

Mr. Avery now appeals his convictions and sentences on six grounds. First, he alleges that the district court erred in not suppressing evidence found in a

search of his home, contending that the affidavit supporting the search warrant contained "false and reckless" information. Second, he contends that his conviction and sentence on one of the weapons charges should be set aside in the wake of the Supreme Court's decision in Castillo v. United States, 530 U.S. 120 (2000). Third, he argues that all five of his convictions under § 924(c)(1) for possessing a firearm in furtherance of a drug trafficking crime must be reversed because of deficiencies in the indictment. Fourth, he asserts that all of his convictions should be overturned because they were not supported by sufficient evidence. Fifth, he contends that one of his cocaine base convictions must be set aside because the prosecution violated a motion in limine order by inquiring at trial into a statement he made to police after being placed under arrest but before receiving his Miranda warnings. Finally, he raises a claim based on the Supreme Court's opinion in Apprendi v. New Jersey, 530 U.S. 466 (2000).

We reject all of Mr. Avery's arguments, and we affirm his convictions and sentences on all counts.

## I. Background

On the evening of December 2, 1997, Paul Shade, an officer with the Wichita Police Department, was conducting surveillance on a residence suspected

of housing drug trafficking activity. At some point that night, Officer Shade observed Mr. Avery leave the residence, get behind the wheel of a vehicle registered in Mr. Avery's name, and depart the scene. Another man sitting in the front passenger seat of the car rode with Mr. Avery. Because of previous contacts with Mr. Avery, Officer Shade suspected that Mr. Avery was driving with a suspended license, and he began following the car. After receiving confirmation that, in fact, authorities had suspended Mr. Avery's license, Officer Shade stopped the vehicle.

Officer Shade then approached the car and asked Mr. Avery for his driver's license and proof of insurance. As Mr. Avery opened the glove compartment to search for the requested documents, Officer Shade observed two baggies containing a white powdery substance protruding from the open pocket of Mr. Avery's windbreaker. Based on his police experience, Officer Shade immediately believed the substance was powder cocaine and placed Mr. Avery under arrest. Subsequent police tests revealed that the baggies contained 3.03 grams of cocaine, though Mr. Avery was never charged in connection with these narcotics.

After arresting Mr. Avery, Officer Shade asked him if there were any other drugs in the car. Mr. Avery responded that the car's glove compartment contained "crack cocaine," but he denied owning these drugs. Officer Shade

proceeded to open the glove compartment, where he discovered 13.72 grams of cocaine base.[1]

On January 30, 2000, a little over two years after the December 1997 arrest, a confidential informant told agents "assigned to the Drug Enforcement Administration State and Local Task Force" that a man identified by the informant as "Big John" was "selling crack cocaine" from his Wichita home at 1534 North Broadview. The informant specifically told officers that on January 30, 2000, he had seen four ounces of cocaine at the residence. After reviewing police photos, the confidential informant identified Jonathan Avery as "Big John."

Based on the information obtained from the confidential informant, agents "formulated plans to make a controlled purchase of crack cocaine from Avery." On February 2, 2000, an agent strip-searched the confidential informant, found him free of "currency and contraband," gave him "$100.00 in recorded money issued by the Wichita Police Department," and took him to 1534 North Broadview. Agents then watched as the confidential informant entered the residence and, after approximately eight minutes, exited the home. The informant, who "remained under constant surveillance,"[2] then rendezvoused with

---

[1]This cocaine served as the basis of Count I of Mr. Avery's indictment.

[2]According to the record, police placed a wire on the informant for "safety
(continued...)

a law enforcement officer and handed the agent a package "containing a white, rock substance, which later field-tested positive for the presence of cocaine." An agent then searched the confidential informant a second time, and the informant was again found free of currency or other contraband.

Later that same day, an agent submitted to a federal magistrate judge an application for a warrant to search Mr. Avery's home.[3] The affidavit accompanying the search warrant application described the controlled buy in the detail discussed above, and it noted that on ten previous occasions the confidential informant had supplied law enforcement authorities with accurate information. The affidavit also explained that the confidential informant had used and sold drugs in the past, though it failed to mention that the informant had a lengthy criminal history that stretched several decades and included convictions for crimes involving theft, forgery, and dishonesty.

Based on this and other information contained in the affidavit, the magistrate judge issued a warrant to search 1534 North Broadview, and agents then executed the search warrant. Mr. Avery was not at the residence at the time

---

[2](...continued)
purposes." Apparently, the wire did not transmit properly. Agents could hear that a conversation was occurring, but they could not understand the content of the conversation.

[3]Mr. Avery concedes that he lived at 1534 North Broadview.

of the search, but his eighteen-year old girlfriend and her ten-year old brother, both of whom lived with Mr. Avery, were at the home.

During the subsequent search, agents uncovered a .22 caliber rifle with a folding stock located in a closet near the front door.[4] In a small, twelve-foot-by-fourteen-foot bedroom located in the southwest portion of the home, officers discovered 20.3 grams of cocaine and 4.07 grams of cocaine base sitting in a plate atop a dresser.[5] In this same plate sat several bullets, and within the dresser on which the plate sat, police found a .380 caliber pistol.[6] Police found a loaded .40 caliber Glock pistol between the mattress and box spring of the bed next to the dresser.[7] The closet of this bedroom also contained firearms, including a slug-loaded 12 gauge shotgun with pistol grips and a loaded Colt AR 15 .223 caliber rifle, which also had a large capacity magazine.[8] A small safe containing cash, including four of the five twenty-dollar bills that the confidential informant had used to purchase drugs earlier in the evening, was also located in this closet.

---

[4]This rifle served as the basis for Count 7 of the indictment.

[5]The 20.3 grams of cocaine formed the basis for Count 2 of Mr. Avery's indictment, and the 4.07 grams of cocaine base served as the basis for Count 3.

[6]This pistol served as the basis for Count 8 of the indictment.

[7]This weapon served as the basis for Count 4 of the indictment.

[8]These weapons formed the basis for Counts 5 and 6 of the indictment.

Besides the weapons, cash, and narcotics, agents found a set of scales and two boxes of baggies in the southwest bedroom. No other drugs or drug paraphernalia were uncovered in the home.

Police officers later interviewed Mr. Avery, who had been arrested away from the home on an outstanding warrant immediately before the search commenced. During this interview, he (1) admitted owning the weapons, (2) identified the weapons, (3) acknowledged selling cocaine from the residence during the previous two-to-three years, and (4) stated that he sometimes personally delivered the cocaine to his customers.[9]

## II. Search Warrant

Mr. Avery first argues on appeal that the evidence obtained during the police search of the 1534 North Broadview residence must be suppressed because the affidavit supporting the search warrant application omitted information concerning the credibility of the government's confidential informant. Specifically, Mr. Avery argues that the law enforcement agents failed to inform the federal magistrate judge who authorized the search warrant that the informant

---

[9]Mr. Avery made these admissions after receiving his Miranda warnings. He does not challenge the admissibility of these statements on appeal.

had a "lengthy criminal history" that spanned several decades and included "thefts, forgeries, or evidence of dishonesty or false statement." In light of these omissions, Mr. Avery contends, the agents violated the rule announced in Franks v. Delaware, 438 U.S. 154 (1978).

## A. Franks Standard

"Under Franks, a hearing on the veracity of the affidavit supporting a warrant is required if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." United States v. Kennedy, 131 F.3d 1371, 1376 (10th Cir. 1997) (citing Franks, 438 U.S. at 155-56). "The standards of deliberate falsehood and reckless disregard set forth in Franks apply to material omissions, as well as affirmative falsehoods." United States v. McKissick, 204 F.3d 1282, 1297 (10th Cir. 2000). If, after considering the evidence presented at a Franks hearing, the district court concludes by a preponderance of the evidence that the affidavit contains "intentional or reckless false statements," Kennedy, 131 F.3d at 1376, or "material omissions," McKissick, 204 F.3d at 1297, "then the district court must suppress the evidence obtained pursuant to the warrant." Id. If, however, the district court concludes that the omitted information would not have altered the magistrate judge's decision to authorize the search, then the fruits of the

challenged search need not be suppressed.  Id. at 1297-98; Kennedy, 131 F.3d at 1376.

In this case, the district court held a Franks hearing on the alleged omissions in the affidavit and, after considering the evidence presented at the hearing, denied Mr. Avery's motion to suppress.  According to the court, Mr. Avery "totally failed to establish beyond or by a preponderance of the evidence" that the affidavit supporting the search warrant contained reckless or false statements.  The court, perhaps reassessing its decision to hold a hearing in the first place, concluded that Mr. Avery failed to make even a sufficient offer of proof to justify holding a Franks hearing and found Mr. Avery's testimony at the hearing "not to be credible" and the testimony of two agents at the hearing "to be credible."

We review de novo the ultimate determination of reasonableness under the Fourth Amendment.  United States v. Long, 176 F.3d 1304, 1307 (10th Cir. 1999).  In conducting this de novo review, "we consider the totality of circumstances and view the evidence in a light most favorable to the government.  We accept the district court's factual findings unless those findings are clearly erroneous."  Id.  (citations omitted). We will not reweigh the evidence presented to the district court, second guess the district court's credibility assessments, or

question "reasonable inferences" the district court drew from the evidence. Id. Applying this standard, we affirm the district court's ruling.

## B. Application

As discussed earlier, the affidavit accompanying the search warrant application outlined in detail the confidential informant's allegations and the controlled buy. The affidavit, as Mr. Avery emphasizes, also discussed the informant's reliability. It explained that local law enforcement agents and agents from the Drug Enforcement Administration had "previously utilized this CI for the successful controlled purchases of illegal drugs more than ten (10) times," and that, on each occasion, "the information provided by the CI in reference to the intended targets of investigation proved to be reliable." The affidavit also noted that the informant's description of "the concealment methods and packaging methods of the drugs" proved "accurate" on "at least three prior occasions."

In Mr. Avery's view, however, the affidavit was fatally deficient because it failed to balance its discussion of the informant's past reliability with a discussion of the informant's lengthy criminal history, about which officers knew at the time they submitted the search warrant application.

Certainly, the basis of a confidential informant's knowledge, as well as his reliability, are important factors in deciding whether information in an affidavit supports a finding of probable cause for a search. See Illinois v. Gates, 462 U.S.

213, 233 (1983); United States v. Tuter, 240 F.3d 1292, 1295 (10th Cir. 2001). However, the complete failure of an affidavit to discuss the reliability of an informant does not automatically preclude a finding of probable cause, United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir. 2000) ("When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant."); United States v. Sturmoski, 971 F.2d 452, 457 (10th Cir. 1992) (same), nor is the affidavit's failure to discuss the informant's criminal history when outlining why the informant is reliable automatically fatal. See United States v. Hager, 969 F.2d 883, 887 (10th Cir. 1992) (upholding affidavit despite omission of "informant's involvement in criminal activity"), abrogated on other grounds by Bailey v. United States, 516 U.S. 137 (1995).

Rather, courts reviewing the alleged omission of information bearing on an informant's credibility ask whether, assuming the magistrate judge had been apprised of the omitted information, the judge still "would have found probable cause to issue the search warrant." Kennedy, 131 F.3d at 1377; McKissick, 204 F.3d at 1297 (same). In asking this question, it is important to keep in mind that "[a] magistrate judge's task in determining whether probable cause exists to support a search warrant 'is simply to make a practical, common-sense decision whether, given all the facts and circumstances set forth in the affidavit before

him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Kennedy, 131 F.3d at 1378 (quoting Gates, 462 U.S. at 238)).

In this case, we conclude that even if the affidavit had discussed the confidential informant's criminal history in more detail, the magistrate judge would nonetheless have issued the search warrant. Several factors inform our conclusion. First, the affidavit, though not explicitly mentioning the confidential informant's criminal history, informed the magistrate judge that the informant had used and sold cocaine in the past, thus putting the magistrate judge on notice that the "confidential informant was not a model citizen" and that he had previously violated laws. United States v. Hall, 171 F.3d 1133, 1143 (8th Cir. 1999) (internal quotation marks omitted). Second, magistrate judges, courts have observed, often know, even without an explicit discussion of criminal history, that many confidential informants "suffer from generally unsavory character" and may only be assisting police to avoid prosecution for their own crimes. United States v. Novaton, 271 F.3d 968, 985 (11th Cir. 2001) (internal quotation marks and brackets omitted); see also Hall, 171 F.3d at 1143 (explaining that, "as a matter of law, . . . courts issuing search warrants are aware of the possibility that a confidential informant may be seeking leniency in his or her own situation").

- 13 -

Third, notwithstanding the questionable character of many informants, the Supreme Court has held that a search warrant may still be issued when "a particular informant is known for [his] unusual reliability." Gates, 462 U.S. at 233. In this case, the confidential informant had provided reliable information on ten separate occasions. Given the general background knowledge magistrate judges have about confidential informants, the specific information the magistrate judge had about this confidential informant's prior drug activity, and this informant's past reliability, it is improbable that a specific recitation of the confidential informant's criminal history would have influenced the magistrate judge's decisionmaking process or assessment of the informant's veracity.

Additionally, the affidavit provided the magistrate judge with enough independent corroboration that, in all likelihood, the search warrant for 1534 North Broadview still would have issued. See Danhauer, 229 F.3d at 1006; Sturmoski, 971 F.2d at 457. In particular, the affidavit's description of the controlled buy, performed the same day as the agents submitted the search warrant request, strongly corroborated the informant's claim that drugs were being sold from the residence by Mr. Avery.[10] In light of this corroboration, we

_____

[10]Although the confidential informant at issue in this appeal executed the buy, the agents searched him before and after the buy for contraband and cash, kept him under surveillance throughout much of the transaction, and met him immediately after the transaction ended, at which point he produced the just-purchased crack cocaine. Under such circumstances, the controlled buy is clearly

(continued...)

- 14 -

cannot conclude that inclusion of a more detailed discussion of the confidential informant's criminal history would have affected the magistrate judge's probable cause finding. See United States v. Flagg, 919 F.2d 499, 501 (8th Cir. 1990) (per curiam) (explaining that omission of confidential informant's criminal record and plea agreement was "not clearly critical to the finding of probable cause" where "independent police investigation corroborated the information supplied by the confidential informant").

Accordingly, we reject Mr. Avery's claim that the evidence obtained from the search of 1534 North Broadview should be suppressed.

## III. *Castillo v. United States* Claim

Mr. Avery next alleges that his conviction under Count 6 of the indictment, or, at the very least, his subsequent sentence under Count 6, must be vacated and remanded in light of the Supreme Court's decision in Castillo v. United States,

---

[10](...continued)
corroborative of the informant's allegations, even if the informant himself bought the drugs. See, e.g., United States v. Genao, 281 F.3d 305, 309 (1st Cir. 2002). The fact that the malfunctioning recording device rendered the conversation inside the home inaudible does not, under these circumstances, negate the controlled buy's corroborative value. See United States v. Formaro, 152 F.3d 768, 770 (8th Cir. 1998) (finding controlled buy by confidential informant corroborative where agents kept informants under constant surveillance "except for the time they were with [the drug dealer]").

530 U.S. 120 (2000). In particular, Mr. Avery argues that the indictment for Count 6, which charged Mr. Avery with knowingly possessing a "Colt AR 15 .223 Caliber rifle . . . during and in relation to a drug trafficking crime," failed to allege that the firearm was a "semi-automatic assault weapon." Yet when he was sentenced for possessing the gun in violation of 18 U.S.C. § 924(c)(1), which generally imposes a mandatory minimum sentence of five-years imprisonment, the district court invoked a statutory subsection, §924(c)(1)(B)(i), which raises the mandatory minimum sentence from five years to ten years where the "firearm possessed" was a "semiautomatic assault weapon." Id. Neither the indictment, nor the instructions submitted to the jury discussed whether the Colt AR 15 was a "semiautomatic assault weapon," and, therefore, Mr. Avery contends, his rights under Castillo were violated.

The government, without explanation or analysis, concedes that the Castillo decision requires vacating Mr. Avery's sentence for Count 6. A party's concession of legal error, however, cannot, standing alone, justify reversing a district court, nor can that concession relieve this court of its obligation to evaluate the merits of the legal issue presented on appeal. United States v. Furman, 112 F.3d 435, 438 n.2 (10th Cir. 1997). In this case, we find Mr. Avery's invocation of Castillo erroneous. Consequently, contrary to both parties' suggestion, we affirm Mr. Avery's conviction and sentence on Count 6.

- 16 -

A. <u>Subsequent Revision of § 924(c)</u>

In <u>Castillo</u>, the Supreme Court, interpreting an earlier version of § 924(c)(1), held that "the statutory references to particular firearm types in § 924(c)(1) . . . define . . . separate crime[s]," and, therefore, that "the indictment must identify the firearm type and a jury must find that element proved beyond a reasonable doubt." 530 U.S. at 123. The statute at issue in <u>Castillo</u>, however, differed fundamentally from the one under which Mr. Avery was convicted and sentenced, <u>see</u> <u>United States v. Harrison</u>, 272 F.3d 220, 225 (4th Cir. 2001); <u>United States v. Barton</u>, 257 F.3d 433, 442 (5th Cir. 2001); <u>United States v. Riley</u>, 250 F.3d 1303, 1305-06 (11th Cir. 2001) (per curiam); <u>United States v. Sandoval</u>, 241 F.3d 549, 551-52 & n.1 (7th Cir. 2001), <u>cert denied</u>, 122 S.Ct. 649 (2001), a fact neither the government nor Mr. Avery addresses. The pre-1998 version of § 924(c)(1) that the Court interpreted in <u>Castillo</u> provided that:

> Whoever, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, shall . . . be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle [or a] short-barreled shotgun to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or a firearm muffler, to imprisonment for thirty years.

<u>Castillo</u>, 530 U.S. at 122 (quoting 18 U.S.C. § 924(c)(1) (1988 ed., Supp. V) (alterations in original). Given this statutory language, as well as the overall structure of the statute and the legislative history, the Court reasoned that this

version of § 924(c)(1) created independent substantive crimes depending upon the characteristics of the relevant weapon. In particular, the Court noted that this provision placed weapon type in the same sentence that defined the relevant offense (using or carrying a weapon during and in relation to a crime of violence or a drug trafficking crime), rather than "[breaking up [weapon types] with dashes or separat[ing them] into subsections," as the statute did with other sentencing factors, such as "recidivism," "concurrent sentences," and "parole." Id. at 125.

In 1998, however, Congress amended and substantially revised § 924(c)(1), a fact recognized by the Court in Castillo.[11] See 530 U.S. at 125. Unlike the version at issue in Castillo, the 1998 Amendments "separate[d] the substantive crime from the penalty provisions and plac[ed] those penalty provisions into different subsections." Riley, 250 F.3d at 1306; see also Castillo, 530 U.S. at 125. Additionally, the revised version no longer imposed a "determinate statutory sentence" that a defendant had to receive if he was found to possess a particular type of firearm. Harrison, 272 F.3d at 225. Instead, the post-1998 statute sets a maximum penalty for a § 924(c)(1) violation of life imprisonment and specifies that a defendant found to possess a particular type of weapon will receive a

---

[11]Mr. Avery was indicted for violating § 924(c)(1) in 2000, and the revised version of § 924(c)(1) became effective on November 13, 1998. Riley, 250 F.3d at 1306. Although the Supreme Court issued its Castillo decision in 2000, the defendants in that case were indicted and tried under the pre-1998 version of § 924(c)(1).

- 18 -

specific mandatory minimum prison sentence. Id. at 225-26. The specific § 924(c)(1) subsection at issue in this case, § 924(c)(1)(B)(i), for example, now declares that if "the firearm" at issue was "a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years." 18 U.S.C. § 924(c)(1)(B)(i) (2000) (emphasis added).

In light of these changes, most courts reviewing the revised § 924(c)(1)(B) have concluded that the characteristics of the particular firearm(s) used, carried, or possessed by a defendant are "sentencing factors" that trigger certain mandatory minimum sentences, rather than elements of a separate and distinct crime, which must be alleged in an indictment and proven beyond a reasonable doubt, as Castillo held. Harrison, 272 F.3d at 226; Riley, 250 F.3d at 1306; Sandoval, 241 F.3d at 552; cf. Harris v. United States, —S.Ct.—, 2002 WL 1357277 (June 24, 2002) (holding that the revised § 924(c)(1)(A) defines sentencing factors, as opposed to elements of an offense); Barton, 257 F.3d at 443 (same).

### B. Mandatory Minimums

Deeming weapon type a sentencing factor does not, however, fully foreclose Mr. Avery's Castillo-based argument. Indeed, Mr. Avery never directly refutes our sister circuits' interpretation of the revised § 924(c)(1), and, at times,

- 19 -

he appears to concede implicitly, as these circuits have found, that the version of § 924(c)(1) under which he was convicted and sentenced treats weapon types as a sentencing factor implicating certain mandatory minimum sentences.[12]  Instead, he alludes to the Supreme Court's decision in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and argues that, regardless of whether weapon type defines separate offenses or is merely a sentencing factor, weapon type must still be alleged in the indictment, submitted to a jury, and found beyond a reasonable doubt if the mandatory minimum provisions of § 924(c)(1) are to be invoked by a court.

<u>Apprendi</u> held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id.</u> at 490.  As Mr. Avery implies, <u>Apprendi</u> eschewed narrow, formalistic distinctions between "elements" of an offense and "sentencing factors."  <u>See</u> 530 U.S. at 494. Recently, however, the Supreme Court ruled that <u>Apprendi</u>'s rationale does not apply where a fact increases a defendant's mandatory minimum sentence but does not increase the maximum statutory penalty facing a defendant.  <u>Harris</u>, 2002 WL 1357277; <u>see also</u> <u>United States v. Lujan</u>, 268 F.3d 965, 969 (10th Cir. 2001) (collecting circuit court opinions holding that <u>Apprendi</u> does not apply in the

---

[12]In his opening brief, for example, Mr. Avery discusses how § 924(c)(1)(B)(i) exposes him "to a greater mandatory minimum sentence of ten years."

mandatory minimum context).

Even if it were not foreclosed by the 1998 revisions to § 924(c) and the Supreme Court's Harris decision, Mr. Avery's Castillo argument would fail. Count 6 of the indictment plainly alleged that Mr. Avery knowingly possessed "a Colt AR 15 .223 Caliber rifle" in violation of § 924(c)(1), and jury instruction number seventeen informed the jurors that in order to convict Mr. Avery of a § 924(c)(1) violation, they had to first conclude beyond a reasonable doubt that Mr. Avery possessed "the firearm named in the particular count." Consequently, when the jury convicted Mr. Avery of Count 6, it necessarily found beyond a reasonable doubt that he possessed "a Colt AR 15 .223 Caliber rifle."

This fact is dispositive, because at the time of Mr. Avery's arrest and indictment for the weapons-related charges "semiautomatic assault weapon" was (and still is) expressly defined in the statute as including "any of the firearms, or copies or duplicates of the firearms in any caliber, known as . . . Colt AR-15." 18 U.S.C. § 921(a)(30)(A)(iv); see also United States v. Jamieson, 202 F.3d 1293, 1296 (11th Cir. 2000) (noting that in 1994 "semiautomatic assault weapon" was defined as including a "Colt AR-15"). Therefore, given the indictment and jury instructions in this case, once the jury found Mr. Avery guilty of Count 6, the district court appropriately invoked § 924(c)(1)(B)(i)'s semiautomatic assault weapon provision; the fact necessary to trigger § 924(c)(1)(B)(i)'s ten-year

minimum mandatory sentence–that Mr. Avery possessed a Colt AR-15–had been alleged in the indictment and found by the jury beyond a reasonable doubt. See Lujan, 268 F.3d at 969.

We therefore affirm Mr. Avery's conviction and sentence on Count 6, notwithstanding the government's willingness to concede legal error.

### IV. Other Indictment Challenges

A slightly more complicated issue raised on appeal is whether Mr. Avery's five firearm convictions under § 924(c)(1) (Counts 4,5,6,7, and 8) must be vacated because of deficiencies in the indictment. Section 924(c)(1) punishes "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1). A defendant may be charged for two types of weapon-related offenses under this section. First, a defendant may be convicted for using or carrying a firearm. We have previously explained that in order to convict a defendant under § 924(c)(1)'s use or carry prong, the government must show (1) that the defendant used or carried a firearm and (2) that the weapon played an "integral role" in the underlying offense. See United States v. Shuler, 181 F.3d 1188, 1189-90 (10th Cir. 1999). Second, a defendant

may, in certain circumstances, be convicted under § 924(c)(1) for possessing a firearm. Obtaining a conviction under the "possession" prong of § 924(c)(1) requires the government to prove (1) that the defendant possessed a firearm and (2) that the possession was "in furtherance of" a drug trafficking offense or crime of violence. United States v. Basham, 268 F.3d 1199, 1206 (10th Cir. 2001).

In this case, Mr. Avery was indicted and tried under the "possession" prong of § 924(c)(1).[13] However, as the government concedes, the indictment was not a model of clarity, for it alleged that Mr. Avery "knowingly possessed . . . [the relevant firearm] during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States. In violation of Title 18, United States Code, § 924(c)(1)." As a cursory reading of the indictment illustrates, the words "in furtherance of," which we have treated as a requirement that must be shown in order to obtain a possession conviction under § 924(c)(1), see Basham, 268 F.3d at 1208; United States v. Iiland, 254 F.3d 1264, 1270 (10th Cir. 2001), are omitted. Moreover, the indictment employs the "use or carry" prong's "during and in relation to" language where the terms "in furtherance of" should have been used.

At trial, the district court instructed the jury that Mr. Avery could be found

---

[13]The government concedes that it indicted Mr. Avery under § 924(c)(1)'s possession component. Indeed, neither the indictment nor the jury instructions in this case ever alleged Mr. Avery used or carried the firearms at issue in violation of § 924(c)(1), and no evidence was presented at trial supporting such a claim.

guilty of the § 924(c)(1) charges for possession "during and in relation to <u>or in</u> furtherance of the commission of a drug trafficking crime." Thus, the district court, like the indictment, improperly merged elements from § 924(c)(1)'s "possession" and "use or carry" prongs.

Mr. Avery contends that the omission of the "in furtherance of" language justifies vacating his convictions for two reasons. First, invoking our panel decision in <u>United States v. Prentiss</u> (<u>Prentiss I</u>), 206 F.2d 960 (10th Cir. 2000), he claims that the omission deprives this court of jurisdiction. Second, in a slightly altered version of his jurisdictional claim, he argues that the district court's subsequent jury instructions constructively amended the prior indictment and "permitted the jury to convict under a theory not charged by the government." While we by no means endorse the poor quality of the indictment and jury instructions in this case, we find, for the reasons discussed below, Mr. Avery's arguments unavailing.

### A. <u>Jurisdiction Claim</u>

In light of recent precedent, we can dispense easily with Mr. Avery's jurisdictional claims. In his briefs, Mr. Avery invokes our decision in <u>Prentiss I</u> in support of his claim that alleged defects in his indictment require the automatic reversal of his § 924(c)(1) convictions. At the time Mr. Avery briefed this appeal, <u>Prentiss I</u> was binding precedent in this circuit, and that decision

- 24 -

suggested, as Mr. Avery argues, that the failure of an indictment to allege all the essential elements of an offense "is a jurisdictional defect requiring dismissal, despite citation of the underlying statute in the indictment." 206 F.3d at 965 (internal quotation marks omitted).

After Mr. Avery filed his briefs in this appeal, however, this court, sitting en banc, reversed Prentiss I's jurisdictional analysis in a six-to-four decision. See United States v. Prentiss (Prentiss II), 256 F.3d 971, 981 (10th Cir. 2001) (en banc). In reaching this conclusion, the en banc majority explained, "An indictment's failure to allege an element of a crime is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, i.e., a court's constitutional or statutory power to adjudicate a case." Id. at 982 (internal quotation marks omitted).

A unanimous Supreme Court recently endorsed the position adopted by the en banc majority in Prentiss II in United States v. Cotton, 122 S.Ct. 1781 (2002), holding "that defects in an indictment do not deprive a court of its power to adjudicate a case." Id. at 1785. In the process, the Court distinguished, overruled, or limited cases relied upon by the majority in Prentiss I and the dissenters in Prentiss II to support their jurisdictional analysis, including Stirone v. United States, 361 U.S. 212 (1960), and Ex Parte Bain, 121 U.S. 1 (1887). See Cotton, 122 S.Ct. at 1785; see also Prentiss II, 256 F.3d at 989-90 (Henry, J.,

- 25 -

dissenting) (arguing the jurisdictional question was controlled by the <u>Stirone</u> and <u>Bain</u> decisions); <u>Prentiss I</u>, 206 F.3d at 976 (invoking opinion quoting <u>Stirone</u>).

Therefore, Mr. Avery's claim that his indictment's omission of the words "in furtherance of" deprives this court of jurisdiction is foreclosed squarely by our decision in <u>Prentiss II</u> and the Supreme Court's ruling in <u>Cotton</u>.

### C.  Sufficiency of Indictment

Even if the alleged deficiencies in the indictment do not deprive this court of jurisdiction, the question still remains whether Mr. Avery's indictment was so deficient as to mandate reversal.

As a general matter, "[w]e review the sufficiency of an indictment de novo." <u>United States v. Gama-Bastidas</u>, 222 F.3d 779, 785 (10th Cir. 2000). "An indictment need only meet minimal constitutional standards, and we determine the sufficiency of an indictment by practical rather than technical considerations.  An indictment is sufficient if is sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." <u>United States v. Dashney</u>, 117 F.3d 1197, 1205 (10th Cir. 1997) (citations omitted).

Mr. Avery, however, did not raise his challenge to the omission of the "in furtherance of" language until after the jury returned its guilty verdict.[14] Where a

---

[14]In his briefs, Mr. Avery argued that he had challenged the sufficiency of
(continued...)

- 26 -

defendant first challenges "the absence of an element of the offense" after a jury verdict, "the indictment [will be deemed] sufficient if it contains words of similar import to the element in question." Id. (internal quotation marks omitted). As long as the indictment contained words sufficient to inform the defendant of the charge against him, the indictment will be upheld. Id. at 1206. "[W]e will find the indictment sufficient unless it is so defective that by any reasonable construction, it fails to charge the offense for which the defendant is convicted." Gama-Bastidas, 222 F.3d at 786 (emphasis added; internal quotation marks omitted). Because of this liberal construction rule, an indictment challenged for the first time post-verdict may be found sufficient, even though that indictment would have been found wanting had it been challenged pre-verdict. Id. at 786 n.5. In addition, where, as here, the defendant "does not contend that he had no notice" of the offense for which he was being charged, "we will read the indictment with maximum liberality." Id. at 786.

As Mr. Avery notes, the terms "in furtherance of" and "in relation to" are not entirely interchangeable. See United States v. Mackey, 265 F.3d 457, 461

[14](...continued)
the indictment, when he objected to proposed jury instructions on the § 924(c)(1) counts. The record demonstrates, however, that Mr. Avery only objected to the terminology of the jury's instructions; he in no way challenged, or even referenced, language contained in the indictment, a point Mr. Avery forthrightly acknowledged at oral argument. He never alleged, for example, that the challenged jury instructions were inappropriate because they constructively amended his indictment.

(6th Cir. 2001); Iiland, 254 F.3d at 1271-72; United States v. Ceballos-Torres, 218 F.3d 409, 413 (5th Cir. 2000). The significance of the distinction between the two terms, however, does not justify reversal in this case. As we noted in Iiland, the difference between the "in furtherance of" language and the "during and in relation to" language is only "slight[]." 254 F.3d at 1271. Similarly, the Sixth Circuit, while recognizing differences between the meanings of "in furtherance of" and "during and in relation to," explained that the distinction between the two standards is "somewhat elusive." Mackey, 265 F.3d at 461. In fact, both our Iiland decision and the Sixth Circuit's Mackey decision proceeded to evaluate whether relevant conduct could be considered "in furtherance of" a drug trafficking crime by considering prior case law interpreting § 924(c)(1)'s "during and in relation to" requirement. See Mackey, 265 F.3d at 461; Iiland, 254 F.3d at 1272-74.

Courts have also emphasized that the "during and in relation to" and the "in furtherance of" requirements of § 924(c)(1) both serve similar functions: both mandate that the government prove more than the mere presence of a gun during a drug trafficking crime. See United States v. Timmons, 283 F.3d 1246, 1253 (11th Cir. 2002); Iiland, 254 F.3d at 1274; Shuler, 181 F.3d at 1190-91. The "in furtherance of" language requires the government to show that the weapon "furthered, promoted or advanced" either a crime of violence or a drug trafficking

crime.  Iiland, 254 F.3d at 1274; see also Timmons, 283 F.3d at 1252 (explaining that a conviction for possession of a firearm in furtherance of a drug trafficking crime "requires that the prosecution establish that the firearm helped, furthered, promoted, or advanced the drug trafficking"); Mackey, 265 F.3d at 461 (explaining that the firearm "must promote or facilitate the crime"); Ceballos-Torres, 218 F.3d at 415 (explaining that the defendant's possession must "further[], advance[], or help[] forward the drug trafficking offense").  Put another way, courts have explained, "[b]y requiring that the possession be 'in furtherance of' the crime, Congress intended a specific nexus between the gun and the crime charged."  Mackey, 265 F.3d at 462; see also Timmons, 283 F.3d at 1253 (same); Basham, 268 F.3d at 1207 (explaining that there must be a "direct connection between the firearm and the drug offense"); United States v. Finley, 245 F.3d 199, 203 (2d Cir. 2001) ("[T]he requirement in § 924(c)(1) that the gun be possessed in furtherance of a drug crime may be satisfied by a showing of some nexus between the firearm and the drug selling operation.").

Similarly, we have held that § 924(c)(1)'s "in relation to" language, "'at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence.'"  Iiland, 254 F.3d at 1271 (quoting Smith v. United States, 508 U.S. 223, 238 (1993)).  As with the "in furtherance of" requirement,

- 29 -

we have pointed out, the "in relation to clause" is intended to prevent the punishment of "possession alone." Id. Consequently, we have explained that the "during and in relation to" standard requires there to be "a nexus between . . . the firearm and the underlying offense," Shuler, 181 F.3d at 1190, the same standard many courts use when describing the meaning of "in furtherance of." See Timmons, 283 F.3d at 1253; Basham, 268 F.3d at 1207; Mackey, 265 F.3d at 462. The "during and in relation to" nexus will exist, we have noted, "when the 'defendant avail[s] himself of the weapon and . . . the weapon plays an integral role in the [underlying offense],'" Shuler, 181 F.3d at 1190 (quoting United States v. Lampley, 127 F.3d 1231, 1240 (10th Cir. 1997)) (emphasis added). This "availment" and "integral role" terminology, though not identical to the requirement that the weapon have "furthered, promoted, or advanced" the underlying offense, Iiland, 254 F.3d at 1274, certainly carries a similar meaning.

In sum, then, although there may be differences between the meaning of "in furtherance of" and "during and in relation to," the two standards appear to carry substantially the "same import," namely that there must be a nexus between the firearm and the alleged crime, and that the mere possession of the firearm by a person connected to and engaged in a drug trafficking crime is insufficient to trigger § 924(c)(1). Cf. Dashney, 117 F.3d at 1206 (upholding an indictment that omitted the word "willful" but did charge the defendant with "knowingly,

intentionally, and unlawfully" acting).

Our conclusion on this score is reinforced by the references in Mr. Avery's indictment to § 924(c)(1).  Although we have "held that reference to the charging statute in the body of the indictment [is] not alone a sufficient substitute for the recitation of an essential element," Gama-Bastidas, 222 F.3d at 787, we have held that reference to the statute can be a factor when assessing the sufficiency of an indictment.[15]  Dashney, 117 F.3d at 1206 (citing United States v. Bolton, 68 F.3d 396, 400 (10th Cir. 1995).

Given that there is only a "slight" difference that is "somewhat elusive"

---

[15]Two opinions from our sister circuits pre-dating the addition of the "in furtherance" of language also bolster our similar import analysis.  In United States v. Ruelas, 106 F.3d 1416 (9th Cir. 1997), a defendant raised a post-verdict challenge to his § 924(c)(1) indictment, alleging that his indictment was deficient because it used the term "possess" when it meant to indict him for "using or carrying" a firearm.  Id. at 1418.  The Ninth Circuit noted that, under Supreme Court precedent, the mere possession of a firearm cannot satisfy § 924(c)'s "use" or "carry" requirements.  Id. at 1418-19.  Despite the indictments's use of a term that required a standard of proof slightly below what was required to prove the "use" or "carr[iage]" of a firearm, the Ninth Circuit upheld the conviction, in part because the indictment contained the relevant statutory provision and the defendant could have resolved any ambiguity in the indictment by challenging it before entering his guilty plea.  Id.  Similarly, the Fourth Circuit, in United States v. Williams, 152 F.3d 294 (4th Cir. 1998), rejected a post-verdict challenge to an indictment that used the term "possession" rather than "use" or "carry."  Noting that it must give a liberal construction to an indictment challenged post-verdict, the court found the defendant's claim unavailing, reasoning, "[The defendant] does not contend that [the indictment's] imprecision made him unable to prepare an adequate defense, or to be aware of the charge against him, or otherwise specifically impaired his ability to defend himself.  Instead, he simply points out the discrepancy and complains that it [entitles him to relief]."  Id. at 299.

between the meaning of "in furtherance of" and "during and in relation to" in

§ 924(c)(1), that Mr. Avery never alleged that the indictment failed to put him on

notice that he was being prosecuted under § 924(c)(1)'s possession prong,[16] that

Mr. Avery did not challenge his indictment until post-verdict, and that we review

indictments liberally when they are challenged for the first time after a verdict,

we find the deficiencies in his indictment insufficient to warrant reversal.

### D.  Constructive Amendment

Finally, we consider Mr. Avery's contention that the subsequent jury

instructions indicating that a defendant could be convicted of a § 924(c)(1)

possession violation if the weapon was "possessed during and in relation to or in

furtherance of" a drug trafficking crime, resulted in a constructive amendment of

the grand jury's indictment.  "A constructive amendment of an indictment occurs

when the terms of the indictment are in effect altered by the presentation of

evidence and jury instructions which so modify essential elements of the offense

charged that there is a substantial likelihood that the defendant may have been

convicted of an offense other than that charged in the indictment."  United States

v. Gauvin, 173 F.3d 798, 805 (10th Cir. 1999) (internal quotation marks omitted).

Mr. Avery's argument on this score is somewhat difficult to follow, as he never

---

[16]Mr. Avery had never argued, for instance, that he believed he was being prosecuted for "carrying" or "using" the firearms in furtherance of a drug trafficking offense.

explains what offense the jury may have convicted him of other than possession of a weapon in violation of § 924(c)(1), nor does he ever allege that he was misled about the substance of the crime for which he was being charged. See United States v. Hien Van Tieu, 279 F.3d 917, 921 (10th Cir. 2002) (refusing to find constructive amendment violation in part because "[a] review of the record confirms Defendant was not misled by the terms of the indictment.").

Instead, he seems to allege that "during and in relation to" is so fundamentally different from "in the furtherance of" that he must have been convicted under a theory different from the one alleged in the indictment. For the reasons previously explained, the difference between "during and in relation to" and "in furtherance of" do not raise a "substantial likelihood" that Mr. Avery "has been convicted of an offense" or under a theory other than possessing a firearm in violation of § 924(c)(1). Gauvin, 173 F.3d at 805 (internal quotation marks omitted).

## V. Sufficiency of the Evidence

Mr. Avery broadly asserts that the government failed to present sufficient evidence to support any of his convictions, though his subsequent discussion of this argument focuses almost exclusively on Count 1 (cocaine found in the glove

compartment of his car) and Counts 4, 5, 6, 7, and 8 (possession of firearms in furtherance of drug trafficking crime).

We review de novo whether the prosecution presented sufficient evidence to support a conviction. United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999). In conducting this review, however, we ask whether, "taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." Id. (internal quotation marks omitted). During this review, we will not assess witness credibility or re-weigh the evidence presented to the jury. See United States v. McKissick, 204 F.3d 1282, 1289 (10th Cir. 2000); United States v. Beers, 189 F.3d 1297, 1301 (10th Cir. 1999). After reviewing the record, we find Mr. Avery's insufficiency of the evidence claims meritless.

## B. Possession

A critical element to all of Mr. Avery's convictions is the concept of "possession." Generally speaking, possession of contraband, whether it be drugs or a firearm, may be either "actual or constructive." United States v. Hager, 969 F.2d 883, 888 (10th Cir. 1992) (applying constructive possession to drug conviction under 21 U.S.C. § 841(a)(1)); see United States v. Wahl, 290 F.3d 370, 375-76 (D.C. Cir. 2002) (holding possession of firearm under § 924(c)(1) may be

constructive); United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994) (applying constructive possession to weapons charge under 18 U.S.C. § 922(g)). Constructive possession, we have explained, exists when a person "knowingly has ownership, dominion, or control over" the particular object. Hager, 969 F.2d at 888; see Mills, 29 F.3d at 549. In "most cases," constructive possession over an object "may be inferred if a defendant had exclusive possession of the premises" where the object is found, but constructive possession may also be found in joint occupancy cases where the government demonstrates "some connection or nexus between the defendant and the firearm or other contraband." Mills, 29 F.3d at 549; see also United States v. Taylor, 113 F.3d 1136, 1145 (10th Cir. 1997) (noting that in joint occupancy constructive possession cases, "the government must present some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband") (internal quotation marks omitted). "Circumstantial evidence may establish constructive possession." United States v. Hishaw, 235 F.3d 565, 571 (10th Cir. 2000).

### C. Cocaine in Car

Mr. Avery first challenges the sufficiency supporting his conviction for possessing with the intent to distribute the thirteen grams of cocaine base found inside the glove compartment of his car on December 2, 1997. Mr. Avery does not develop this argument in particular detail, but the crux of his claim is that the

cocaine "could [just] have easily" belonged to his passenger. In essence, he seems to be suggesting, the government never established the required nexus between Mr. Avery and the crack cocaine found in the glove compartment. We disagree.

In order to obtain a § 841(a)(1) conviction, "the Government must prove the defendant: (1) possessed the controlled substance; (2) knew he possessed the controlled substance; and (3) intended to distribute or dispense the controlled substance." McKissick, 204 F.3d at 1291 (citing United States v. Dozal, 173 F.3d 787, 797 (10th Cir. 1999)).

As Mr. Avery appears to suggest, it is well established that a defendant's constructive possession over drugs or other contraband cannot be inferred simply from the fact that he jointly occupied an area where the contraband was recovered. See Taylor, 113 F.3d at 1146; see also United States v. Reece, 86 F.3d 994, 996 (10th Cir. 1996) (finding evidence insufficient to support possession conviction where government only demonstrated that defendant drove the car "containing illegal narcotics" and "was clearly acquainted with [the individual] . . . on whose person the narcotics were found"). In this case, however, the government presented at trial additional evidence from which a reasonable jury could have concluded that Mr. Avery possessed with the intent to distribute the thirteen grams of cocaine base found in the car's glove compartment. First, the

vehicle was registered in Mr. Avery's name, and Mr. Avery was driving the car immediately before the crack cocaine's discovery. See McKissick, 204 F.3d at 1291. Second, the government produced Mr. Avery's February 2000 confession, in which he stated that he had been selling quantities of cocaine for the past two-to-three years and that he sometimes personally delivered the cocaine to his customers. Cf. Hishaw, 235 F.3d at 572 (explaining that prior possession may, "in certain instances, . . . support an inference of constructive possession"). Third, minutes before the cocaine was discovered in the car's glove compartment, two baggies of cocaine were found in Mr. Avery's windbreaker. Fourth, Officer Shade testified that Mr. Avery, although denying ownership, told him that the glove compartment contained cocaine.[17] Fifth, Officer Shade also testified that Mr. Avery neither stated nor implied that his passenger owned the cocaine. Cf. Reece, 86 F.3d at 996 (finding evidence insufficient to support driver's possession conviction because, in part, the passenger testified that the he, and not the driver, owned the narcotics found in the car's glove compartment). Viewed in totality, this evidence easily would have allowed a reasonable jury to conclude beyond a reasonable doubt that Mr. Avery possessed with the intent to distribute the thirteen grams of cocaine found in the glove compartment of his car.

---

[17]Mr. Avery contends that the admission of this statement violated a motion in limine order. We address this issue below, but even if we were to conclude that this statement should have been excluded, we believe the other evidence introduced by the government was more than sufficient to sustain his conviction.

## D. Cocaine in Home

In passing, Mr. Avery also appears to challenge the sufficiency of the evidence supporting his convictions on Counts 2 and 3, which charged him with possessing with the intent to distribute the cocaine and cocaine base found in the southwest bedroom of 1534 North Broadview in February 2000. Mr. Avery appears, based on a parenthetical statement in his brief, to argue that, because his girlfriend also occupied the southwest bedroom, the government did not adequately connect the drugs to Mr. Avery. In light of the passing and casual nature of Mr. Avery's argument, it is not entirely clear he has adequately preserved this issue for review. See Ambus v. Granite Bd. of Educ., 975 F.2d 1555, 1558 n.1 (10th Cir. 1992), modified on other grounds on reh'g, 995 F.2d 992 (10th Cir. 1993) (en banc); Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990). Assuming, however, that he properly preserved the issue for review, we find his argument unpersuasive.

It is undisputed that Mr. Avery lived at the 1534 North Broadview residence and occupied the home's southwest bedroom, where agents found the cocaine and cocaine base, four weapons, a set of scales, two boxes of sandwich baggies, and a safe containing quantities of cash, including four twenty-dollar bills used earlier that day in the controlled buy. Although it is true that uncontradicted evidence suggests that Mr. Avery's girlfriend also occupied the

southwest bedroom, Mr. Avery's admission that he sold cocaine from the residence, when combined with the evidence uncovered in the bedroom, easily would have allowed a reasonable jury to conclude beyond a reasonable doubt that Mr. Avery (1) knew about the cocaine and cocaine base in the home, (2) exercised dominion and control over the cocaine and cocaine base, and (3) intended to sell the cocaine and cocaine base. McKissick, 204 F.3d at 1291.

### E. Firearms

By far the most significant sufficiency of the evidence claim raised by Mr. Avery is that the government failed to demonstrate that he possessed the multiple weapons found inside the residence "in furtherance of" a drug transaction, as required under § 924(c)(1). Specifically, Mr. Avery argues that the government only showed (1) that he possessed the firearms and (2) that he possessed drugs. It never offered, he contends, evidence supporting the conclusion that he used the weapons to advance or promote drug sales. For the reasons discussed below, we reject Mr. Avery's argument.

As discussed earlier, in order to obtain a possession conviction under § 924(c)(1), the government must demonstrate that (1) the defendant committed a crime of violence or a drug trafficking crime, (2) possessed a firearm, and (3) possessed the firearm in furtherance of the underlying crime. 18 U.S.C. § 924(c)(1); Basham, 268 F.3d at 1206. As also explained above, trial evidence

- 39 -

clearly supported the jury's conclusion that Mr. Avery committed a drug trafficking crime from the home where the guns were found. The record also unequivocally supports the conclusion that Mr. Avery owned the five firearms that form the basis of Counts 4, 5, 6, 7, and 8,[18] a fact Mr. Avery concedes on appeal. Consequently, the only question is whether the government presented sufficient evidence to satisfy § 924(c)(1)'s "in furtherance of" element.

As outlined earlier, § 924(c)(1)'s "in furtherance of" language requires the government to prove a nexus between a defendant's possession of firearms and the defendant's drug trafficking activity. Basham, 268 F.3d at 1207. Generally speaking, the government must demonstrate that the defendant's firearm possession "furthered, promoted or advanced his illegal drug activity." Iiland, 254 F.3d at 1274.

Courts have repeatedly ruled that simply showing that the defendant was "a drug dealer [who] possessed a gun" is insufficient to obtain a § 924(c)(1) conviction. See Iiland, 254 F.3d at 1274. However, we specifically have held that "a firearm that is kept available for use if needed during a drug transaction, is 'possessed in furtherance of' drug trafficking . . . so long as such possession 'in furtherance of' is the intent of the drug trafficker." Basham, 268 F.3d at 1208.

_____

[18]In his February 2000 confession, Mr. Avery identified each of the weapons at issue in this case and admitted that owned the weapons. This aspect of his confession was introduced at trial.

Moreover, we have explained that deciding whether a defendant intended to possess a weapon in furtherance of a drug trafficking crime is "necessarily . . . subject to proof by circumstantial evidence, and factors such as the type of drug activity being conducted, the accessibility of the firearm, the type of firearm, the legal status of the firearm, whether the firearm is loaded, the proximity of the firearm to drugs or drug profits, and the time and circumstances under which the firearm is found." Id. (citing Ceballos-Torres, 218 F.3d at 414-15); see also Wahl, 290 F.3d at 376 (identifying similar factors).

In this case, contrary to Mr. Avery's suggestions, the evidence presented by the government clearly showed that he was more than a drug dealer who just happened to own several firearms. All five weapons were found in a home from which Mr. Avery admitted that he had sold cocaine. Agents discovered one firearm inside a closet near the home's front door. The confidential informant had entered through the same door when executing the controlled buy. The remaining four weapons were discovered in Mr. Avery's bedroom, the only room in the home where agents found drugs. Inside the small, twelve-by-fourteen foot bedroom was a dresser upon which sat cocaine and cocaine base. Next to this cocaine rested several bullets. Within one of the dresser's drawers was a .380 caliber pistol. Beside the dresser was a bed, and a loaded "model 22 Glock, 40 Caliber Smith and Wesson" lay between the mattress and box spring of this bed.

- 41 -

Inside the closet of this small bedroom police found a slug-loaded Mossberg 12-gauge shotgun, the stock of which had been replaced with "pistol grips." A loaded Colt AR 15 .223 caliber rifle, which had a "large capacity magazine," was also found in the closet, as was a safe containing significant amounts of cash, including four of the five twenty-dollar bills that the confidential informant had used to purchase cocaine from the home a few hours earlier.

As if this circumstantial evidence was not enough, Mr. Avery admitted that at least one of the weapons had been obtained from a gang member intending to "smoke" another individual. In addition, DEA agents testified that it was common for drug dealers to keep guns near by for protection of their persons and their drugs.

Taken as a whole, this evidence strongly suggests that Mr. Avery intended to keep all five firearms "available for use if needed during a drug transaction."[19] Basham, 268 F.3d at 1208. Compare Iiland, 254 F.3d at 1274 (reversing

---

[19]Mr. Avery's only substantive response to this overwhelming evidence is to assert that he possessed the guns for a legitimate reason, explaining that he "is an Army Veteran having served between 1987 and 1993, and had no felony record. . . . Having guns in one's home in Kansas is not uncommon. The guns simply cannot be in furtherance of a drug trafficking offense." There is some question as to whether Mr. Avery even presented this argument to the jury, as Mr. Avery only cites post-trial presentence reports to support his claims and has not provided this court with the opening and closing arguments in this case. Even if he did raise these arguments, however, they hardly negate the sufficiency of the evidence presented by the government.

possession in furtherance of conviction because the government produced "no evidence that the gun and drugs were ever kept in the same place or that [the defendant] ever kept the gun accessible when conducting drug transactions"), with Wahl, 290 F.3d at 376-77 (upholding possession in furtherance of conviction where loaded, illegally owned weapon was found in "close proximity" to drugs and cash); Timmons, 283 F.3d at 1253 (affirming § 924(c)(1) conviction where ammunition, two loaded weapons, and bullet proof vest were found in close proximity to cocaine); Basham, 268 F.3d at 1208 (explaining that "possession of a firearm in proximity to drugs or drug proceeds" may be considered when deciding if a defendant possessed the weapons in furtherance of a drug trafficking crime); Mackey, 265 F.3d at 462-63 (upholding in furtherance of conviction where "there was an illegally possessed, loaded, short-barreled shotgun in the living room of the crack house, easily accessible to the defendant and located near the scales and razor blades" and the defendant "possessed cocaine and a large sum of cash"); and Finley, 245 F.3d at 203 (finding evidence sufficient to support in furtherance of conviction because jury could have concluded that defendant "kept [the weapon] for protection in proximity to the window from which he sold . . . drugs").

## VI. Motion in Limine

Mr. Avery next contends that his conviction on Count 1 should be reversed because the government violated an in limine order preventing the prosecution from introducing a statement he made in response to a question by Officer Shade following the December 1997 stop. Allegedly, after being placed under arrest, but before receiving Miranda warnings, Officer Shade asked Mr. Avery if there were any narcotics in his car besides the two baggies of powder cocaine found on Mr. Avery's person. In response to the question, Mr. Avery stated that the glove compartment of his car contained cocaine.

We find Mr. Avery's argument frivolous. First, other than his attorney's statements before the district court, there is no evidence in the record on appeal that the challenged statement was obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966). Second, given the confusion in the record, it is not at all apparent that the government violated the in limine order. Third, during trial, the district court ruled that the government's questions concerning the statement did not violate its prior in limine ruling. We review this ruling for an abuse of discretion, see United States v. Wagoner County Real Estate, 278 F.3d 1091, 1099 (10th Cir. 2002), and nothing in the record leads us to believe that the district court abused its discretion. Finally, in portions of the record not cited by either

Mr. Avery or the government, it is clear that Mr. Avery's own attorney elicited more damaging descriptions of the statement than did the government.

## VII. Apprendi

Mr. Avery's final argument on appeal is that the district court's failure to instruct the jury on the drug quantities for Count 1 violates his rights under Apprendi. Because Mr. Avery raises his Apprendi claim for the first time on appeal, we review the issue under the plain error standard. United States v. Bailey, 286 F.3d 1219, 1222 (10th Cir. 2002); Cernobyl, 255 F.3d at 1218; Heckard, 238 F.3d at 1235; Hishaw, 235 F.3d at 574. "Under this standard, reversal is warranted only where there is: (1) an error; (2) that is plain or obvious; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. James, 257 F.3d 1173, 1182 (10th Cir. 2001).

As previously discussed, the Supreme Court held in Apprendi that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. As Mr. Avery correctly notes, Count 1 of his indictment charged him with possessing thirteen grams of cocaine, an amount that, under 21 U.S.C. § 841(b)(1)(B)(iii), would have been sufficient to

raise the statutory maximum penalty he faced from twenty to forty years. Compare id. with id. § 841(c). The district court, however, never instructed the jury on the quantity issue.[20] In the wake of Apprendi, we ruled that "under § 841(b)(1), the quantity of drugs is a fact that may increase the penalty for a crime beyond the prescribed statutory maximum and therefore must be submitted to a jury, and proved beyond a reasonable doubt," if the defendant's sentence exceeds the statutory maximum. Hishaw, 235 F.3d at 575 (internal quotation marks omitted).

However, Mr. Avery's sentence on Count 1, seventy-eight months, falls below the maximum penalty (twenty years) allowed under § 841(a) where no quantity amount is alleged or submitted to the jury. See 21 U.S.C. § 841(b)(1)(C). In this situation, some of our decisions have suggested that the failure to submit the drug quantity question to the jury cannot be considered "error" under Apprendi. See, e.g., United States v. Combs, 267 F.3d 1167, 1182 (10th Cir. 2001); United States v. Eaton, 260 F.3d 1232, 1239 (10th Cir. 2001); United States v. Wilson, 244 F.3d 1208, 1215 (10th Cir. 2001) cert. denied sub nom, 121 S.Ct. 2619 (2001); United States v. Thompson, 237 F.3d 1258, 1262 (10th Cir. 2001). In slight contrast to these holdings, other Tenth Circuit opinions

---

[20]Although Mr. Avery's trial and sentencing occurred before the Supreme Court's Apprendi decision, "its holding is applicable to his pending appeal on direct review." United States v. Wilson, 244 F.3d 1208, 1214 (10th Cir. 2001), cert. denied sub nom, 121 S.Ct. 2619 (2001).

have concluded that the failure to submit the drug quantity issue to the jury is error, but then reasoned that, because the defendant's actual sentence did not exceed the statutory maximum he could have received had the <u>Apprendi</u> error not occurred (in this case, twenty years), the error did not affect the defendant's "substantial rights." <u>See</u> <u>Heckard</u>, 238 F.3d at 1235; <u>Hishaw</u>, 235 F.3d at 577. Therefore, even assuming that the district court committed error by not submitting the quantity issue to the jury, Mr. Avery's sentence on Count 1 would not be reversible under the plain error standard because it did not violate his substantial rights.

## VIII. <u>Conclusion</u>

For the foregoing reasons, we **AFFIRM** Mr. Avery's convictions and sentences in all respects.