**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 15 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JUAN BOJORQUEZ-GRANILLO,

     Defendant-Appellant.

No. 02-8113

(D.C. No. 02-CR-47-2-D)
(D. Wyoming)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McWILLIAMS** and **LUCERO,** Circuit Judges.

Defendant Juan Bojorquez-Granillo appeals his conviction of carrying a firearm

during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c),

(Count III) and the two-level sentencing enhancement for obstruction of justice pursuant

to U.S.S.G. § 3C1.1.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

On February 6, 2002, defendant and his co-defendant Oscar Sanchez-Figueora

were arrested at the Guadalajara Restaurant in Casper, Wyoming, on the basis of

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

information provided by Julie Wallace. At the direction of police, Wallace had placed recorded phone calls to Sanchez-Figueora and arranged for delivery of one kilogram of cocaine to the Guadalajara Restaurant. During trial, the government presented evidence of a pattern of telephone contacts and deliveries of cocaine prior to the February 6 delivery. In each instance, Wallace would call Sanchez-Figueora, who in turn would call the defendant. A delivery of cocaine would then take place.

On February 6, police went to the Guadalajara Restaurant and found a black Jeep Grand Cherokee with Colorado license plates registered to Roger Peacock of Aspen, Colorado. Defendant and Sanchez-Figueora were sitting at a table inside the restaurant. Police found a small amount of cocaine inside a pack of cigarettes on the table at the defendant's elbow. The keys to the Jeep were found on Sanchez-Figueora. The defendant admits that Sanchez-Figueora drove the Jeep to Casper and that the defendant was a passenger. A preliminary search of the vehicle was fruitless but officers noticed the dash was misaligned and loose. A later more thorough search revealed that the front passenger air bag had been removed and a hidden compartment had been built in that area. Police found one kilogram of cocaine wrapped in plastic and duct tape, a small package of cocaine, two loaded clips for a nine millimeter pistol, and a Baretta nine millimeter semiautomatic pistol in the compartment. The area was accessible to either the driver or the passenger via a multi-switch system. Defendant's fingerprints were found on the adhesive side of the duct tape which was wrapped around the kilogram package of

cocaine. No identifiable fingerprints were found on the firearm or the clips and there was no evidence that defendant owned the pistol or that anyone had seen defendant with the pistol. A DEA agent testified at trial that drug dealers frequently carry semiautomatic handguns when selling drugs "to avoid being ripped off by the other drug dealer." Supp. ROA, Vol. 3 at 431.

Defendant was convicted by a jury of conspiracy to possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count I), possession with intent to distribute one kilogram of cocaine, in violation of § 841(a)(1)(b)(1)(B) (Count II), and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count III). Defendant does not appeal his convictions on Counts I and II. He was sentenced to consecutive terms of 90 months on Counts I and II and 60 months on Count III. At sentencing, the court applied an obstruction of justice enhancement, finding that defendant had committed perjury at trial. The court stated at sentencing:

> The Court thought at the time that the testimony of the defendant was preposterous, inventive but preposterous nevertheless, that somehow his fingerprints got on the tape in the fashion that he said it did. He got tape for his friend who is the co-conspirator in this case, and I just – I just thought it was absurd then and I think it's absurd now. If it's absurd, it also follows that it's not truthful. The jury certainly didn't buy it, and I don't buy it either.
> I'm gratified to hear the United States say that every time a person testifies is not to suggest that even if that person is found guilty there should be a finding that the statement was perjurious. But I think, by a "preponderance of the evidence" standard, I can clearly state, without any doubt in my own mind, that I thought it was – I thought it was false when

3

he said it, and I think it meets the standard of perjury. I do not think it was a truthful statement.

ROA, Vol. 5 at 40-41.

On appeal, defendant argues (1) there was insufficient evidence for the jury to convict him of the firearm charge, and (2) the district court erred in applying a two-level sentencing enhancement for obstruction of justice.

II.

*Sufficiency of evidence*

This court reviews de novo the legal issue of sufficiency of evidence. See United States v. Hien Van Tieu, 279 F.3d 917, 921 (10th Cir. 2002). "Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. 18 U.S.C. § 924(c) provides in part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime – (i) be sentenced to a term of imprisonment of not less than 5 years.

The provision of section 924(c) directed to *possessing* a firearm "in furtherance of" a drug trafficking crime was added in 1998 as one of several amendments promulgated in response to Bailey v. United States, 516 U.S. 137 (1995). The pre-1998 version of the statute specified penalties only when defendants *used* or *carried* firearms

4

"during or in relation to" drug trafficking crimes. Id. at 142-43. In Bailey, the Court narrowed the definition of "use," holding the term means "active employment of a firearm." Id. at 144. In dicta, the Court observed that a firearm could be "carried without being used." Id. at 146. The Court did not definitively address the meaning of "carry," but did suggest that "carrying" involves more than "mere possession." Id. at 149. Three years later, in Muscarello v. United States, 524 U.S. 125, 126-27 (1998), the Court held that the phrase "carries a firearm" applies "to a person who knowingly possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car, which the person accompanies."

Subsequent to the 1998 amendments, this court held the "in furtherance of" requirement that accompanies the possession prong is a higher standard than the "during and in relation to" standard that accompanies the use and carry prongs. United States v. Iiland, 254 F.3d 1264, 1274 (10th Cir. 2001). Thus, there are three distinct types of section 924(c) violations: (1) using a firearm during and in relation to a drug trafficking crime or crime of violence, (2) carrying a firearm during and in relation to such a crime, and (3) possessing a firearm in furtherance of such a crime. See United States v. Avery, 295 F.3d 1158, 1174-75 (10th Cir. 2002) (acknowledging while the phrases "during and in relation to" and "in furtherance of" are "not entirely interchangeable," they "carry substantially the 'same import'"). This case clearly does not involve the "use" or "active employment" of a firearm.

On appeal, the parties have blurred the distinction between the carry and possession prongs of section 924. The defendant contends the government has failed to prove that he "knowingly *possessed* the pistol *in relation to* the drug trafficking offense." Aplt. Br. at 6 (emphasis added). Essentially, the defendant argues there is no evidence that he knew the gun was in the vehicle.

The government's response also merges the elements of the carrying and possession prongs. Essentially, the government argues there was sufficient evidence at trial of a "nexus" or connection between the pistol and cocaine to support the conviction. The government simply suggests that "in furtherance of" and "during and in relation to" are "very similar terms," both intended to "ensure that there is a nexus between the firearm and drug trafficking." Gov't Br. at 7-8.

This case, however, was charged and tried as a "carrying" case, not as a possession case. Count III of the indictment, which was filed on March 22, 2002, charged that defendant "did knowingly, intentionally and unlawfully *carry and possess* a firearm . . . *during and in relation to* a drug trafficking crime." ROA, Vol. 1, Doc. 11 at 7 (emphasis added). Thus, the indictment contains both elements of a carrying charge: (1) carrying, and (2) during and in relation to a drug trafficking crime. On the other hand, the indictment lacks the second element of a possession charge -- that the firearm was carried "in furtherance of" a drug trafficking crime.

Moreover, while the jury instructions were somewhat ambiguous, the jury was

6

only fully instructed as to a carrying charge. In the elements instruction, the jury was instructed that the government was required to prove the defendant "[d]uring and in relation to the commission [of one or both of the underlying crimes] . . . knowingly carried a firearm." ROA, Vol. 2, Doc. 120 (instruction no. 34). The district court went on to define the phrases "carries a firearm," Id. (instruction no. 36), and "in relation to" Id. (instruction no. 37). While the district court also defined the phrase "in furtherance of," Id. (instruction no. 38), the court's elements instruction did not indicate that "in furtherance of" was an element of the offense. Id. (instruction no. 34).

Section 924(c) does not expressly set forth the required *mens rea* for carrying. In Muscarello, however, the Court held that a defendant carries firearms for purposes of section 924(c) when he "*knowingly* possesses and conveys firearms in a vehicle." Muscarello, 524 U.S. at 127 (emphasis added). On appeal, the defendant argues that "[i]t is on the issue of *knowing* possession that the Government's case most clearly failed." Aplt. Br. at 6-7 (emphasis in original).

As a practical matter, the *mens rea* element of the carrying prong of section 924(c) is encompassed by the other limiting words of the statute -- words that make the statute applicable only if a defendant carries a firearm "in relation to" a drug trafficking crime. This court has stated that to obtain a conviction under the carrying prong of § 924(c) the government must "establish a nexus between the carriage of the firearm and the underlying offense." United States v. Shuler, 181 F.3d 1188, 1190 (10th Cir. 1999). To

7

prove this connection, the government's evidence must support a finding that the defendant "*intended* the weapon to be available for use" during the underlying offense. Id. (emphasis in original) (internal quotations omitted). A defendant cannot "intend" a firearm to be available without knowing that he possesses it. Thus, the "in relation to" language that accompanies the "carrying" prong of section 924(c) precludes defendants from being convicted under § 924(c) for accidentally or unknowingly "carrying" weapons. See United States v. Mancillas, 183 F.3d 682, 708 (7th Cir. 1999) (stating that, as to jury instructions, the "during and in relation to" element of section 924(c) "encompasses a knowledge requirement"); United States v. Santeramo, 45 F.3d 622, 624 (2d Cir. 1995) (holding that, as to indictment, *scienter* need not be expressly alleged in section 924(c) count, because "the language 'during and relation to' fairly imports the knowledge requirement").

In this case, the government presented evidence that the defendant was heavily involved in dealing drugs with Sanchez-Figueora. Namely, there was evidence of a pattern of telephone contacts wherein Wallace would call Sanchez-Figueora to arrange drug deals and Sanchez-Figueora would in turn call the defendant. A delivery of cocaine would then take place. There was also evidence presented at trial that the defendant was involved in the February 6 drug deal. The usual pattern of telephone calls occurred just prior to February 6. The defendant, along with Sanchez-Figueora, then traveled from Aspen, Colorado, to Casper. The defendant was arrested along with Sanchez-Figueora at

8

a location where Wallace had arranged to purchase cocaine from Sanchez-Figueora. A sample of cocaine was found on the table at the defendant's elbow at the time of arrest. The defendant's fingerprints were found on the adhesive side of the duct tape that was wrapped around the kilogram package of cocaine. Further, the evidence showed that it was intended by someone that the pistol be available during the drug deal. The cocaine and the pistol were hidden together in a small compartment, and it was not possible to open that compartment without gaining access to both the cocaine and the pistol. Although the pistol was not loaded, it was hidden with two clips of ammunition and could have been loaded quickly.

From this evidence the jury reasonably could have inferred and concluded beyond a reasonable doubt that the defendant carried the pistol from Aspen to Casper, intending that it be available during and in relation to the underlying drug trafficking offense. The defendant notes that no fingerprints were found on the pistol, there was no testimony by anyone who had seen the defendant with the pistol, and the pistol was sufficiently well hidden so that someone could have been in the Jeep Cherokee without knowing about the pistol. Indeed, the government's case does leave open the possibility that Sanchez-Figueora hid the pistol on his own, unbeknownst to the defendant. However, "[i]t is not necessary that evidence preclude every hypothesis except guilt even though the conviction may rest primarily on circumstantial evidence." United States v. Yates, 470 F.2d 968, 970 (10th Cir. 1972) (discussing amount of evidence necessary to support a verdict). For

9

these reasons, we conclude that the government presented sufficient evidence to support the jury's verdict.

*Obstruction of justice enhancement*

This court reviews the district court's legal interpretation of the Sentencing Guidelines de novo and reviews factual findings in support of an enhancement for obstruction of justice for clear error. United States v. Gardiner, 931 F.2d 33, 34 (10th Cir.1991). The district court must enhance a defendant's base offense level by two levels if it finds that "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and . . . the obstructive conduct related to . . . the defendant's offense of conviction." U.S.S.G. § 3C1.1(A)-(B).

A section 3C1.1 enhancement predicated upon perjury is appropriate when the sentencing court finds that the defendant has given "'[i] false testimony [ii] concerning a material matter [iii] with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" See United States v. Mounkes, 204 F.3d 1024, 1029 (10th Cir.) (quoting United States v. Dunnigan, 507 U.S. 87, 94 (1993)), cert. denied, 530 U.S. 1230 (2000). "'Material' evidence . . ., as used in . . . section [3C1.1], means evidence . . . that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n.6).

At sentencing, the district court found that defendant's testimony of how his

fingerprints got on the duct tape was false. On appeal, the defendant does not dispute that his testimony regarding the duct tape was material. He does not argue that his testimony was the result of confusion, mistake, or faulty memory. Rather, the defendant argues (1) that the district court failed to identify the testimony it believed to be false, and (2) that the district court only found the defendant's testimony was "absurd," which, according to the defendant, is not necessarily the same as false. Aplt. Br. 10-13.

There is no merit to the defendant's arguments. The court clearly identified the substance of the defendant's false testimony. At sentencing, the court stated that, "the testimony of the defendant was preposterous, inventive but preposterous nevertheless, that somehow his fingerprints got on the tape in the fashion that he said it did." ROA, Vol. 5 at 40-41. Moreover, the court left no doubt that it found the defendant's testimony regarding the duct tape to be false. The court stated that, "[t]he jury certainly didn't buy it, and I don't buy it either." Id. The court further stated, "I thought it was false when he said it, and I think it meets the standard for perjury. I do not think it was a truthful statement." Id. The district court did not err in applying the two-level enhancement for obstruction of justice.

*Motion for new counsel*

Attorney Melville Dunn represented the defendant at trial and represents the defendant on appeal. The defendant has filed a pro se motion for appointment of new counsel, indicating that he wishes to raise a claim of ineffective assistance at trial.

11

"Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995). "A factual record must be developed in and addressed by the district court in the first instance for effective review." Id.

The defendant's conviction and sentence are AFFIRMED. The motion for appointment of new counsel is DENIED.

<div style="margin-left:50%">

Entered for the Court

Mary Beck Briscoe
Circuit Judge

</div>