**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 3, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

STACY EUGENE WHITAKER,

Defendant - Appellant.

No. 05-1258

(D. Colorado)

(D.C. No. 03-CR-275-02-N)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA,** Chief Circuit Judge, **ANDERSON** and **BALDOCK** , Circuit
Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Following a jury trial, Stacy Eugene Whitaker was found guilty of seven counts relating to the distribution of cocaine powder and crack cocaine: one count of conspiracy to distribute powder cocaine, in violation of 21 U.S.C. §§ 841 and 846; one count of conspiracy to distribute fifty grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841 and 846; and five individual counts of distribution of crack cocaine, in violation of 21 U.S.C. § 841. Whitaker was sentenced to 135 months' imprisonment. He appeals his conviction on count two, conspiracy to distribute fifty grams or more of crack cocaine. We affirm.

**BACKGROUND**

Whitaker concedes that there was sufficient evidence at trial to support his convictions for conspiracy to distribute powder cocaine and for the five individual counts of distribution of crack cocaine. His only issue in this appeal is the sufficiency of the evidence at trial to support his conviction for conspiracy to distribute crack cocaine. Accordingly, we limit our recitation of the facts to those relevant to that issue.

Co-defendant Michael Dunn, also Whitaker's stepbrother, testified at Whitaker's trial pursuant to a cooperation agreement with the government. Barbara Thomas, Tracey Lewis, Mayam Robinson, and Bianca Hudson also testified for the government. Dunn testified that around "the time frame of

2002," while he was living in Colorado, he was selling crack cocaine to "everyone on the Indictment," including Whitaker. [1] R. Vol. II at 35-36. Dunn testified that he sold two to three kilograms, both crack and powder cocaine, per month at that time. Dunn further testified that he was stopped by the police in 2002, which prompted him to move to Texas. When he left Colorado for Texas, Dunn stated he "gave a few [of his customers] away" to Whitaker. Id. at 39; see also R. Vol. III at 138. Among those to whom he "introduce[d]" Whitaker were Barbara Moorer, Barbara Thomas, a "guy named James," and Bianca Hudson. R. Vol. II at 40.

Dunn then testified that he got back into the drug business in Colorado some four months before the indictment in this case. He began "selling drugs . . . to all of [his] old customers[,] [i]ncluding Stacy Whitaker[.]" Id. at 43. Dunn also testified he "ma[d]e deliveries for Stacy Whitaker" to Wendell Davis and Barbara Thomas. Id.; see also id. at 91-92. When asked if these "customers," formerly Dunn's and then Whitaker's, bought crack or powder cocaine, Dunn responded "they might buy powder, they might buy crack cocaine, you know, it all depends." R. Vol. III at 156. Dunn also testified about a "long-time friend," Darrell Ray, who, on two occasions, cooked Dunn's powder cocaine into crack

---

[1]The following individuals were indicted along with Whitaker: Dunn, Ollie Ray Brandon, Welton Harris, Samuel James Robinson, Thomas, Mayam Robinson, Darrel Iseal Ray, Barbara Moorer, and Wendell Davis.

cocaine at Mayam Robinson's house. R. Vol. II at 44-45. Dunn further stated that Robinson made deliveries and collected money for him and that Dunn kept his drugs at Robinson's house. Robinson testified to an occasion when Whitaker, accompanied by another man, came to her house to pick up a package of powder cocaine.

Barbara Thomas testified that she began buying crack cocaine from Dunn in 2001. When Dunn decided to move to Texas, Thomas testified that Dunn introduced her to Whitaker. Thomas further indicated that, following Dunn's departure, she bought "mostly crack" cocaine from Whitaker "[t]wice a week." R. Vol. III at 180. After Dunn returned to Colorado from Texas, Thomas testified she bought cocaine from him once and then from Whitaker "continually after that[.]" Id. at 181. Thomas indicated that most of what she purchased from Whitaker was crack cocaine, and that she bought powder cocaine on "only a couple of occasions." Id. at 184. The government also introduced evidence of a series of recorded phone calls between Whitaker and Thomas concerning crack cocaine. Thomas further testified about a deal "set up" by Whitaker whereby Dunn brought crack cocaine to Thomas's house. Id. at 197-98. Thomas stated that she bought drugs weekly from Whitaker and that her "customers" were crack addicts, id. at 201, and that they "c[a]me to [her] on a regular basis." Id. at 202.

Tracy Lewis testified that he was arrested with crack cocaine he had purchased from Whitaker. Lewis further testified that he had been purchasing crack cocaine from Whitaker "two or three times a week." Id. at 275. He testified that some of the crack cocaine he bought from Whitaker was purchased for other users who had asked him to "make the buy." Id. at 277. Lewis testified that between March 2002 and May 2002 he purchased "between half ounces and ounces" quantities of crack cocaine two or three times a week from Whitaker and he "always was going half with other people." Id. at 279-80. The quantities he purchased increased in July and August 2002 "[b]ecause [he] had c[o]me across some money from some other people." Id. at 280. Lewis estimated that between April and November of 2002, he purchased between $25,000 and $35,000 worth of crack cocaine from Whitaker, which was "between 1 and 2" kilos. Id. at 285. Lewis further stated that Whitaker was getting the drugs he sold to Lewis from Dunn. Id. at 278.

Whitaker argues that the evidence presented at trial, which includes the above evidence, is insufficient to support the jury's guilty verdict on the conspiracy to distribute crack cocaine count.

**DISCUSSION**

"'We review de novo whether the prosecution presented sufficient evidence to support a conviction.'" United States v. Serrata, 425 F.3d 886, 895 (10th Cir. 2005) (quoting United States v. Avery, 295 F.3d 1158, 1177 (10th Cir. 2002)). In conducting that review, "'we ask whether, taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" Id. (quoting Avery, 295 F.3d at 1177). We do not "re-weigh the evidence or assess the credibility of witnesses." Id. Accordingly, "[w]e will not reverse a conviction . . . unless no rational trier of fact could have reached the disputed verdict." United States v. Wilson, 182 F.3d 737, 742 (10th Cir. 1999).

To prove the existence of a conspiracy, the government must show the following: "(1) that two or more people agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged co-conspirators were interdependent." United States v. Small, 423 F.3d 1164, 1182 (10th Cir. 2005), cert. denied, 126 S. Ct. 1377 (2006). With respect to the fourth element of interdependence, "[w]hat is required is a *shared*, single criminal objective, not just similar or parallel objectives between similarly situated

-6-

people." Id. (quoting United States v. Evans, 970 F.2d 663, 670 (10th Cir. 1992)). However, "[a] defendant need not have knowledge of all the details or all the members of the conspiracy and may play only a minor role in the conspiracy." Id. (further quotation omitted). Thus, "[t]he government need only prove by direct or circumstantial evidence that the defendant knew at least the essential objectives of the conspiracy, and the defendant knowingly and voluntarily became part of it." Id. at 1182-83 (further quotation omitted).

While conceding the existence of a conspiracy to distribute powder cocaine, Whitaker argues there is no evidence that he did anything other than act alone with respect to his sales of crack cocaine: "In the crack cocaine transactions [Whitaker] acted alone, acquiring the drugs, taking the order, making the delivery and collecting the price all by himself." Appellant's Opening Br. at 9. We disagree.

We have noted that "'[w]here large quantities of narcotics are being distributed, each major buyer may be presumed to know that he is part of a wide-ranging venture, the success of which depends on performance by others whose identity he may not even know.'" Small, 423 F.3d at 1183 (quoting United States v. Watson, 594 F.2d 1330, 1340 (10th Cir. 1979)). There is certainly evidence showing Whitaker's distribution of such large quantities of crack cocaine in this case. Additionally, there is evidence that Whitaker purchased crack cocaine from

Dunn, that Dunn then introduced Whitaker to many of Dunn's purchasers, who subsequently purchased from Whitaker and sometimes from Dunn and sometimes from the two together. Thus, there is evidence that at least Dunn and Whitaker had a common, shared objective to distribute crack cocaine to a group of shared customers, who, in turn, both used the drugs themselves and distributed them to others. While Whitaker would have us believe there was a neat and discreet separation between the admitted powder cocaine conspiracy and the crack cocaine conspiracy, the record does not support any such separation. We have carefully reviewed the entire record, and, given our "restrictive standard of review," id. at 1182 (further quotation omitted), we conclude that there is sufficient evidence supporting the jury's verdict of guilty on the conspiracy to distribute crack cocaine count.

## CONCLUSION

For the foregoing reasons, we AFFIRM Whitaker's conviction on count two.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge