In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2897

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LARRY HARVEY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05-CR-12-C—**Barbara B. Crabb**, *Chief Judge.*

ARGUED SEPTEMBER 7, 2006—DECIDED APRIL 17, 2007

Before RIPPLE, KANNE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* After Larry Harvey was caught driving with drugs and a gun in his glove compartment, he wound up facing a federal indictment charging him with violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A). Section 841(a)(1), as relevant to Harvey, prohibits possession of cocaine base with intent to distribute it; section 924(c) prohibits in various ways the use, carrying, or possession of a firearm when there is some nexus to either a crime of violence or a drug trafficking crime. In Harvey's case, the language used in the indictment to charge his § 924(c) "carrying" offense differed slightly from the wording of the statute. Harvey pleaded guilty to both counts of the indictment, but he now claims

that the § 924(c) count failed to charge a federal offense. He argues that the poorly-crafted indictment should be dismissed, or, in the alternative, that he should be allowed to withdraw his guilty plea. Harvey also protests that the district court erred by ordering him to submit to drug testing at the direction of the probation officer as a condition of his supervised release. Finding no error, we affirm.

**I**

Harvey was driving his car in Beloit, Wisconsin, on January 7, 2005, when some police officers pulled him over for a traffic violation. As one officer approached the car, he noticed open beer bottles inside the car and asked the occupants to step out of the vehicle. His suspicions were aroused immediately when the passenger fled on foot. Harvey was wise enough not to do that; instead, he cooperated while the officers conducted a pat-down search, which turned up $2,500 cash in his pants pocket. The officers then arrested Harvey and searched the rest of the car. In the glove box, they found 50.07 grams of crack cocaine, 11.74 grams of powder cocaine, 15.2 grams of marijuana, a digital scale, a loaded .32 caliber KelTec handgun with an obliterated serial number, and a Wisconsin certificate of title to an automobile bearing Harvey's name.

On January 26, 2005, a grand jury returned a two-count indictment, charging Harvey with possession of more than five grams of a mixture or substance containing cocaine base with intent to distribute and with "knowingly and intentionally carr[ying] a firearm . . . in furtherance of a drug trafficking crime . . . ." Harvey pleaded guilty to both counts. He was sentenced to 96 months' imprisonment on the first count, and a consecutive 60 months on

the second, which added up to a combined sentence of 156 months, all of which was to be followed by a five-year term of supervised release.

## II

Harvey argues that the second count of the indictment fails to charge him with a federal offense. Count 2 accuses Harvey of violating 18 U.S.C. § 924(c)(1), which provides, in relevant part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years . . . .

18 U.S.C. § 924(c)(1)(A)(I). Harvey claims that § 924(c) defines two distinct offenses: one makes it illegal to *use or carry* a firearm *during and in relation to* a crime of violence or drug trafficking crime; and the other makes it a crime to *possess* a firearm *in furtherance of* any such crime. The indictment, he continues, does not follow either pattern. Instead, it mixes the "carrying" language of the first part with the "in furtherance of" phrase of the second part. This, Harvey argues, amounts to the creation of an impermissible hybrid § 924(c) offense.

We consider first whether, in light of the fact that Harvey pleaded guilty, we should reach this argument at all. As we pointed out in *United States v. Behrman*:

> [The] contention that all constitutional arguments always may be presented despite promises made in plea agreements (and no matter what the agreement says) is impossible to reconcile with cases such as

> *Bousley v. United States*, 523 U.S. 614 (1998), *United States v. Broce*, 488 U.S. 563 (1989), and *Mabry v. Johnson*, 467 U.S. 504, 508 (1984), which hold that by pleading guilty defendants waive all objections—including constitutional objections—to their convictions. Only arguments that would nullify the plea itself survive. If a voluntary guilty plea may waive a basket full of potential constitutional objections to searches and seizures, confessions, and *the validity of the indictment* and prosecution (including claims under the double jeopardy clause that logically would preclude any sentence), it is impossible to see why a voluntary plea agreement may not waive constitutional objections to the particular sentence imposed.

235 F.3d 1049, 1052 (7th Cir. 2000) (emphasis added). If Harvey were not seeking to withdraw his plea agreement, *Bousley* implies that the only argument he could present here is one of actual innocence—not mere legal insufficiency. See 523 U.S. at 623-24. Harvey has asked, however, to withdraw his plea. The government points out that he failed to do so before the district court, and thus that our review is limited to an evaluation of plain error. See *United States v. Vonn*, 535 U.S. 55, 59 (2002); *United States v. Martinez*, 289 F.3d 1023, 1029 (7th Cir. 2002). We agree with its assessment, and we thus proceed to consider Harvey's argument about the indictment on that basis.

Because Harvey challenges the indictment for the first time on appeal, we will uphold its validity "unless it is so obviously defective as not to charge the offense by any reasonable construction." *United States v. Smith*, 223 F.3d 554, 571 (7th Cir. 2000) (quoting *United States v. Vanderberg*, 358 F.2d 6, 10 (7th Cir. 1966)); see also *United States v. Johnson*, 805 F.2d 753, 758 (7th Cir. 1986) (same). Generally speaking, "tardily challenged indictments

should be construed liberally in favor of validity." *United States v. Smith*, 230 F.3d 300, 306 n.3 (7th Cir. 2000).

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged. . . ." FED. R. CRIM. P. 7(c)(1). This court has said that "[a]n indictment is constitutionally sufficient and satisfies FED. R. CRIM. P. 7(c)(1) if it states the elements of the crime charged, informs the defendant of the nature of the charge so she may prepare a defense, and enables the defendant to plead the judgment as a bar against future prosecutions for the same offense." *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997) (citing *Hamling v. United States*, 418 U.S. 87 (1974)). In order for an indictment adequately to notify the defendant of the nature of the charges against him or her, "we require, at a minimum, that it provide some means of pinning down the specific conduct at issue." *Smith*, 230 F.3d at 305. While it is normally sufficient for an indictment to track the words of the statute under which the defendant is being charged, this kind of mimicry is not necessary. Instead, "Indictments are reviewed on a practical basis and in their entirety, rather than in a hypertechnical manner." *Smith*, 230 F.3d at 305 (internal quotations omitted). The question is not "whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Allender*, 62 F.3d 909, 914 (1995).

Applying these standards, the indictment in this case, while not perfect, is not so defective as to require reversal. It included enough information to notify Harvey of the statute under which he is being charged and the specific way in which he allegedly violated that law. Whether we construe § 924(c) as creating one offense or two, it remains true that the separate parts of § 924(c) criminalize sim-

ilar behavior. See *United States v. Castillo*, 406 F.3d 806, 814 (7th Cir. 2005) ("Quite simply, the portion of § 924(c) upon which we focus was intended to 'combat the dangerous combination of drugs and guns.'" (quoting *Muscarello v. United States*, 524 U.S. 125, 132 (1998)). The language used in the indictment here alerts Harvey that he is being charged with what the statute as a whole aims to prevent: carrying a firearm that is closely connected to an underlying drug offense.

The Tenth Circuit faced a problem very similar to the one before us in *United States v. Avery*, 295 F.3d 1158 (10th Cir. 2002). In *Avery*, the defendant was charged under § 924(c) after drugs and numerous firearms were found in his house. The indictment "employ[ed] the 'use or carry' prong's 'during and in relation to' language where the terms 'in furtherance of' should have been used." *Avery*, 295 F.3d at 1172. In affirming Avery's § 924(c) convictions, the court emphasized the fact that "the difference between the 'in furtherance of' language and the 'during and in relation to' language is only slight." *Id.* at 1174 (certain internal quotations omitted); see also *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001) (noting that the distinction between the two standards is "somewhat elusive"). The *Avery* court found that, although the two standards are not identical, they "appear to carry substantially the same import, namely that there must be a nexus between the firearm and the alleged crime, and that the mere possession of the firearm by a person connected to and engaged in a drug trafficking crime is insufficient to trigger § 924(c)(1)." *Avery*, 295 F.3d at 1175; see also *United States v. Arreola*, 446 F.3d 926, 933 (9th Cir. 2006) ("The two types of conduct that § 924(c) proscribes are difficult to distinguish conceptually."). The similarity between the two § 924(c) standards, coupled with the fact that Avery waited until after the verdict to challenge the indictment, led the court to conclude that

the deficiencies in the indictment were insufficient to warrant reversal. *Avery*, 295 F.3d at 1176.

Like the *Avery* court, we find that the phrases used in the two parts of the statute are close enough in meaning that Harvey knew the essence of the charges he was facing. *Cf. United States v. Weatherspoon*, 581 F.2d 595, 600 (7th Cir. 1978) ("In determining whether an essential element of the crime has been omitted from the charge, courts will not insist that any particular word or phrase . . . be used. The element may be alleged in any form which substantially states it." (internal citations and quotations omitted)). Harvey's indictment provided further notice to him by referring to the time and place of his offense and by citing § 924(c)(1). See *United States v. Roya*, 574 F.2d 386, 391 (7th Cir. 1978) (finding an indictment sufficient in part because the indictment referenced "the time and place of the defendant's conduct which violated that offense, and citation to the statute or statutes allegedly violated").

Our review of Harvey's plea colloquy bolsters our confidence that he was adequately apprised of the charges against him. In addition to admitting to "knowingly and intentionally . . . carrying a [firearm]" and to doing so "in furtherance of this drug distribution," Harvey volunteered without prompting that he realized that the gun charge carried a "consecutive value." The government's factual proffer was detailed and straightforward; Harvey also offered his own rendition of the facts. With respect to the facts supporting the § 924(c) charge, Harvey admitted, "The officer . . . used the glove box key to open the glove box which way [*sic*] he found everything. That's where everything was contained that was in my possession." The judge responded with the following inquiry:

> THE COURT: And you did have cocaine base or crack cocaine in your car?
>
> HARVEY: Yes.

THE COURT: And you had the gun?

HARVEY: Yes.

Taken as a whole, the depth and clarity of the plea collo-quy demonstrate convincingly that Harvey knew exactly what he was doing and its consequences. See *United States v. LeDonne*, 21 F.3d 1418, 1424 (7th Cir. 1994) ("Utilizing the prosecutor at a plea hearing to identify for the defen-dant the elements of the offense charged, followed by inquiry of the defendant by the judge confirming the defendant's understanding of the elements is an effective method for determining that the defendant understands the nature of the charge to which the plea is offered." (internal quotation marks omitted)).

Moreover, to the extent that the phrase "in furtherance of" differs at all from the phrase "during and in relation to," the former wording logically connotes a higher stan-dard of participation. See, *e.g.*, *Arreola*, 446 F.3d at 931 (examining the legislative history of § 924(c) and conclud-ing that Congress believed "that 'in furtherance of' is a slightly higher standard, and encompasses the 'during and in relation to' language."); *United States v. Combs*, 369 F.3d 925, 933 ("[W]e conclude that 'in furtherance of' differs from 'during and in relation to' and requires the government to prove a defendant used the firearm with greater participation in the commission of the crime. . . ."). Thus, if anything, the government charged and Harvey admitted to a greater connection between the drugs and the gun he carried than the statute may have required. In substance, then, Harvey's admissions during the plea colloquy included the fact that he had carried the firearm "during and in relation to" a drug crime. He cannot now claim that he did not understand the charge. If he had genuinely been confused, he should have said something to the judge during the Rule 11 colloquy, at a time when the government easily could have corrected the problem.

Only a pointlessly hypertechnical reading of the indictment in this case would support Harvey's claim that it was inadequate. Such a reading is particularly inappropriate here, where the indictment was not challenged at the trial level, and where we know that Harvey in fact understood what he was being charged with. We therefore reject Harvey's claim that the indictment failed to charge him with a crime described in § 924(c). For much the same reasons, we also reject Harvey's argument that he should be permitted at this late date to withdraw his guilty plea. He does not argue that there was any other reason why his plea was not entered knowingly and voluntarily, and we see none on this record.

## III

We turn now to Harvey's sentencing claim. He contends the district court erred by delegating to the probation officer the authority to determine the number of drug tests to which he had to submit during his supervised release. At the time this case was argued, the law strongly supported Harvey's claim, to the point that the government was ready to concede that the district court had committed plain error. This court, however, has recently reconsidered the question whether defendants are entitled to relief when the court fails to determine the number of drug tests, even if they do not object at sentencing. See *United States v. Tejeda*, 476 F.3d 471 (7th Cir. 2007). In *Tejeda*, we held that even though such a delegation is an error and would be subject to correction upon a timely objection, it is not so serious that it should also be considered plain error.

Under the statute, a sentencing court has the authority to order drug testing as a condition of supervised release:

The court shall also order, as an explicit condition of supervised release, that the defendant refrain from

any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance.

18 U.S.C. § 3583(d). In *United States v. Bonanno*, 146 F.3d 502, 511 (7th Cir. 1998), we held that this statute does not permit the court to delegate the authority to specify the number of tests to the probation officer. But under plain error review, *Bonanno* only gets Harvey partway home, and *Tejeda* is an insurmountable roadblock. In *Tejeda*, we said that "[a] delegation of discretion over the mechanics of drug testing—when the testing itself is ordered by the court—can hardly be said to affect substantial rights of a defendant." *Tejeda*, 476 F.3d at 475. The facts of this case are almost identical to those of *Tejeda*. In each case, the district court ordered drug testing and then delegated nearly wholesale authority to the probation officer to administer the tests. As we noted in *Tejeda*, "Should the probation officer impose onerous requirements, the condition requiring drug testing can be modified at any time prior to the expiration or termination of the term of supervised release." *Id.* Any problems that may arise from this improper delegation are easily remedied and unlikely to materialize any time soon, since Harvey faces a significant period of incarceration before his period of supervised release begins. Like the defendant in *Tejeda*, therefore, Harvey cannot show that the delegation of authority in this case affects his substantial rights.

**IV**

We hold that the indictment was sufficient in this case, Harvey is not entitled to withdraw his guilty plea, and the error in the supervised release provisions of his sentence

does not amount to reversible plain error. We therefore AFFIRM the judgment of the district court.

A true Copy:

       Teste:

                          _____

                         *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*