In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-1910

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SETH A. COX,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 06 CR 40063—**Michael M. Mihm**, *Judge.*

———————

ARGUED MAY 14, 2008—DECIDED AUGUST 4, 2008

———————

Before BAUER, FLAUM and MANION, *Circuit Judges.*

BAUER, *Circuit Judge.* Seth Cox was convicted of conspiring to manufacture, distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846. The district court sentenced Cox to 300 months' imprisonment and five years of supervised release. Cox appeals his conviction and sentence, and for the following reasons, we affirm.

## I. BACKGROUND

From early 2003 through January 2004, Audie Weir operated a methamphetamine-producing laboratory out of his home in Bradford, Illinois. To produce methamphetamine, Weir needed the appropriate ingredients, and would rely on various users to bring him ingredients in exchange for drugs. Cox first met Weir in either late 2002 or early 2003, when he accompanied his cousin to Weir's house to trade ingredients for methamphetamine. Over the ensuing ten months, Cox went to Weir's house at least once a week, frequently purchasing drugs or trading ingredients for drugs from Weir. In addition to providing ingredients to Weir, Cox helped him install a four-camera surveillance system in his home. On January 2, 2004, state law enforcement officers raided Weir's house and uncovered the lab.

On June 22, 2005, a grand jury returned a single-count indictment against Cox and three other men under 21 U.S.C. § 846 for conspiring to violate § 841(a), "that is, to knowingly and intentionally manufacture, distribute, and possess with intent to distribute" a controlled substance. Cox's three co-defendants pleaded guilty; Cox went to trial. The government's evidence at trial, detailing the facts set out above, included the testimony of Weir, four other co-conspirators, and three law enforcement officers.

On October 5, 2006, a jury returned a guilty verdict. The district court sentenced Cox on April 13, 2007 to 300 months' imprisonment, five years of supervised release, a $100 special assessment, and joint and several liability along with his co-defendants with respect to $6,137.56 in restitution. This timely appeal followed.

## II. DISCUSSION

Cox argues that (1) the indictment charging him was constitutionally defective, requiring vacatur; (2) the district court erred by allowing a prejudicial comment before the jury without striking it or giving a limiting instruction; and (3) the district court erred in calculating the quantity of methamphetamine for which Cox was responsible. We address each issue in turn.

### A. Sufficiency of the Indictment

Cox raises two issues in arguing that his conviction should be vacated because of the defects in the indictment. First, he argues that the indictment misstated the statute under which he was charged, and therefore failed to give adequate notice of the nature of the charge. Second, he argues that the indictment failed to state all of the elements of a drug-related conspiracy, again failing to give him notice of the charge.

Cox challenges the indictment for the first time on appeal. "[I]f an indictment has not been challenged at the trial level, it is immune from attack unless it is so obviously defective as not to charge the offense by any reasonable construction." *United States v. Sandoval*, 347 F.3d 627, 633 (7th Cir. 2003) (citing *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002)). "[T]ardily challenged indictments should be construed liberally in favor of validity." *United States v. Harvey*, 484 F.3d 453, 456 (7th Cir. 2007) (citing *United States v. Smith*, 230 F.3d 300, 306 n. 3 (7th Cir. 2000)).

Under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, an indictment must be "a plain, concise, and

definite written statement of the essential facts constituting the offense charged. . . ." Fed. R. Crim. P. 7(c)(1). We have held that an indictment is constitutionally sufficient and satisfies Rule 7(c)(1) if: (1) the indictment states all of the elements of the crime charged; (2) it adequately apprises the defendant of the nature of the charges so that he may prepare a defense; and (3) it allows the defendant to plead the judgment as a bar to any future prosecutions for the same offense. *Harvey*, 484 F.3d at 456 (citing *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997)). As a general matter, "[i]ndictments are reviewed on a practical basis and in their entirety, rather than in a hypertechnical manner." *Id.* (quoting *Smith*, 230 F.3d at 306 n. 3).

Section 841(a)(1) makes it unlawful for a person knowingly or intentionally "(1) to manufacture, distribute, *or* dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1) (emphasis added). The indictment charged Cox with conspiring to violate § 841(a), "that is, to knowingly and intentionally manufacture, distribute, *and* possess with intent to distribute" a controlled substance.

Cox first argues that the language of § 841(a) makes it a crime to perform any one of four prohibited acts (to manufacture, distribute, dispense, or possess with intent to do any of the other three acts), whereas the indictment indicates that a person only violates § 841(a) when he performs each and every one of those acts. Based on this, Cox posits that he could have reasonably believed that the governments' failure to prove any one of these elements would have justified acquittal. However, the substitution of the conjunctive "and" for the disjunctive "or" does not torpedo Cox's indictment. We have held

that "where a statute defines two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count." *United States v. Moore*, 363 F.3d 631, 640 (7th Cir. 2004) *vacated on* Booker *grounds sub nom. Young & Jackson v. United States*, 543 U.S. 1100, 125 S.Ct. 1019, 160 L.Ed.2d 1001 (2005) (citing *United States v. LeDonne*, 21 F.3d 1418, 1427 (7th Cir. 1994). Other circuits have held the same. *See United States v. Brown*, 504 F.3d 99, 104 (D.C. Cir. 2007); *United States v. Montgomery*, 262 F.3d 233, 242 (4th Cir. 2001); *United States v. McAuliffe*, 490 F.3d 526, 534 (6th Cir. 2007); *United States v. Roy*, 408 F.3d 484, 492 n. 4 (8th Cir. 2005); *United States v. Booth*, 309 F.3d 566, 572 (9th Cir. 2002); *see also* 1 Charles A. Wright, *Federal Practice and Procedure* § 125 (3d ed. 1999) ("Many statutes specify a variety of ways a particular crime can be committed, and if so, the indictment may allege commission of the offense by all the acts mentioned if it uses the conjunctive 'and' where the statute uses the disjunctive 'or.' "); 9 *Federal Procedure, Lawyers Edition* § 22:863 (2008).

Cox attempts to skirt the rule by arguing that Cox was indicted for a conspiracy under § 846, and not for a substantive violation of § 841, and that the rule does not apply in conspiracy situations. This is a distinction without a difference. The purpose of the rule allowing conjunctive wording in an indictment that charges an offense under a statute worded in the disjunctive is to "adequately apprise the defendant of the government's intention to charge him under [any] prong of the statute." *LeDonne,* 21 F.3d at 1427. An indictment that did not follow this rule and alleged several acts in the disjunctive would fail to give the defendant notice of the acts he is charged with committing. *See generally* 1 Charles A. Wright, *Federal Practice and Procedure* § 125 (3d ed. 1999) (citing

*United States v. Donovan*, 339 F.2d 404, 407-08 (7th Cir. 1964) *cert. denied* 85 S.Ct. 1338, 380 U.S. 975, 14 L.Ed.2d 271)). The same principle applies here. Had the indictment not included the "and," Cox would not have been adequately apprised of the fact that the government was charging him with conspiring to commit any one of the specific acts listed in the indictment. The fact that he was charged under the conspiracy statute does not change the government's duty to inform Cox of all the potential illegal acts he is alleged to have committed.

In any event, we cannot say on a practical basis that the indictment was obviously defective for including the conjunctive, and the lack of prejudice is indicated by the fact that Cox did not think to make this argument to the district court.

Cox briefly mentions that the district court may have constructively amended the indictment through the jury instructions, which replaced the "or" found in § 841(a)(1) and stated that "[t]he government need not prove that the defendant conspired to commit all three offenses." He does not develop this argument; at any rate, we have addressed this argument before in this context, and rejected it. *See United States v. Jones*, 418 F.3d 726, 729-30 (7th Cir. 2005) (finding that the substitution of "or" in jury instructions for "and" in indictment did not broaden charge so as to constructively amend the indictment); *United States v. Muelbl*, 739 F.2d 1175, 1179-81 (7th Cir. 1984).

Cox next argues that the indictment fails to set forth the elements of conspiracy under 21 U.S.C. § 846. The indictment alleges that from March 2003 to July 2005 in Henry County, Illinois, Cox and others "did conspire" to commit an offense under § 841(a). He argues that this was

not enough to state all of the elements of the crime charged, as it did not offer a legal definition of the term "conspire" or "conspiracy." We have held that an indictment under § 846 is sufficient if it alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative, and the statute allegedly violated. *United States v. Spears*, 965 F.2d 262, 279 (7th Cir. 1992) (citing *United States v. Sweeney*, 688 F.2d 1131, 1140 (7th Cir. 1982)); *United States v. Dempsey*, 806 F.2d 766, 769 (7th Cir. 1986)*; United States v. Roman*, 728 F.2d 846, 852 (7th Cir. 1984). Construing the indictment in this case "liberally in favor of validity," the indictment easily satisfied these requirements.

We find nothing in the indictment "so obviously defective as not to charge the offense by any reasonable construction."

### B. Comments During Trial

During the trial, two government witnesses described the method used to cook methamphetamine in clandestine labs such as Audie Weir's as the "Nazi method."[1]

---

[1] Why the "Nazi method"? Our sister circuit explained: "The 'Nazi method' makes use of readily available ingredients and yields a very pure product. The technique takes its name from the method perfected and used by German soldiers during World War II to produce methamphetamine so they could stay alert while in the field." *United States v. Lynch*, 322 F.3d 1016, 1018 n.2 (8th Cir. 2003); *see also United States v. Ward*, 182 Fed.App'x 779, 792 n.5 (10th Cir. 2006) (unpublished opinion) ("The 'Nazi method' of manufacturing methamphet-
(continued...)

Cox argues that the district court plainly erred by failing to strike the "Nazi" comments as irrelevant or unduly prejudicial, and by failing to *sua sponte* clarify that Cox was not affiliated with the Nazis in any way. Cox did not object to the comments, so we review for plain error. *United States v. Price*, 418 F.3d 771, 779 (7th Cir. 2005). Under this standard, we may reverse only if the error complained of meant that Cox "probably would not have been convicted but for the [error]." *United States v. Curtis*, 280 F.3d 798, 801 (7th Cir. 2002).

We recognize the powerful emotions associated with the very mention of the word "Nazi" in a courtroom, and that the description by the government witnesses of the method used by Weir had almost no probative value. The difficulty with Cox's argument is that he failed to give the district court opportunity to balance the probative value of the evidence against any unfair prejudice, and it was incumbent upon him to do so. To require the district court, without prompting, to comment on facts as they unfold in the course of the proceedings would place the court in the role of an advocate. The district court did not err in failing to *sua sponte* strike the comment from the record or to instruct the jury that Cox was not affiliated in any way with the Nazis or neo-Nazis. Of course, even if it did err in that regard, Cox has not met his burden in demonstrating that he probably would not have been convicted but for the "Nazi method" comment. The evidence presented at Cox's trial was more than

---

[1] (...continued)
amine obtained its name because the process originated in Germany and was utilized in World War II by their troops.").

sufficient to establish that Cox was a participant in the methamphetamine conspiracy. No plain error exists by the admission of the statements of the government witnesses.

### C. Drug Quantity

Cox finally argues that the district court erred in calculating the quantity of methamphetamine for which Cox was responsible. He contends that the primary evidence relied upon by the court in making its calculation—the testimony of Weir—lacked sufficient reliability.

We review a district court's calculation of drug quantity for sentencing purposes for clear error. *United States v. Soto-Piedra*, 525 F.3d 527, 529 (7th Cir. 2008). The government must prove drug quantity by a preponderance of the evidence. *Id.* (citing *United States v. McGowan*, 478 F.3d 800, 802 (7th Cir. 2007)). We require that the evidence relied upon by the district court at sentencing bear "sufficient indicia of reliability." *United States v. Wilson*, 502 F.3d 718, 721-22 (7th Cir. 2007).

Evidence of drug quantity must be based on more than just "nebulous eyeballing," but the Sentencing Guidelines permit some amount of reasoned "speculation and reasonable estimation" by the sentencing court. *United States v. Hollins,* 498 F.3d 622, 631 (7th Cir. 2007) (quoting *United States v. Jarrett*, 133 F.3d 519, 530 (7th Cir. 1998); *see* U.S.S.G. § 2D1.1, Application Note 12 ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, . . . similar transactions in controlled substances by the de-

fendant. . . ."). In this case, the district court calculated the drug quantity attributable to Cox by multiplying the average weight of methamphetamine cooked by Weir during each batch by the number of times that he cooked methamphetamine during the time that Cox participated in the conspiracy. We have previously up-held similar methods of calculation. *See, e.g.*, *United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004); *United States v. Beler*, 20 F.3d 1428, 1434 (7th Cir. 1994).

Weir testified that in each production, he "always" cooked at least fifty grams of methamphetamine. He further testified that he "sometimes" cooked seventy-five grams, and "occasionally" more than 150 grams. The PSR estimated that the average weight per production was 110 grams. Cox objected to this estimate, and suggested that the amount should be "average[d] down" to between fifty and a hundred grams. The district court agreed to Cox's proposal, and adopted an average of seventy-five grams per production.

As to the frequency of production, Weir's testimony was less clear. He testified at one point that he cooked methamphetamine at least two times a month; at another point, he claimed he cooked "[o]nce a week most of the time." The district court reviewed the trial transcript and found that Cox was involved in the drug conspiracy for ten months, and Cox agreed to that time frame. Based on these two facts, the district court conservatively esti-mated that, during time that Cox was involved with the conspiracy, Weir cooked methamphetamine at least

twenty-four times.[2] This calculation was thoroughly explained by the district court, and we find no error in the method or explanation.

Cox argues that the district court should not have relied on Weir's testimony because he was an admitted methamphetamine user and gave inconsistent testimony regarding events two years prior to the sentencing hearing, a period during which Weir admittedly used drugs. Determinations of witness credibility are entitled to great deference and "can virtually never be clear error." *United States v. Blalock*, 321 F.3d 686, 690 (7th Cir. 2003). While heavy drug use is a factor that the court can use in making its determination, it is not outcome-determinative. *See United States v. Crockett*, 82 F.3d 722, 727 (7th Cir. 1996). The district court scrutinized Weir's testimony precisely because of the concerns raised by Cox, and noted that "I did not get the sense during the course of his testimony that he was fabricating or exaggerating." That judgment is afforded substantial deference.

The testimony of Weir, judged by the district court to be credible, bore sufficient indicia of reliability, and therefore we find no clear error in the court's drug quantity calculation.

---

[2] As the government correctly notes, even if the district court strictly used the "two times a month" production rate, two productions per month over ten months at seventy-five grams per production equals a total of 1,500 grams of methamphetamine, which is the minimum amount needed to place Cox's offense at Level 34, the level at which he was sentenced.

### III. CONCLUSION

Accordingly, we AFFIRM Cox's conviction and sentence.

USCA-02-C-0072—8-4-08