In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1632

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEVIN W. SCHAUL,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:16-cr-30067-SEM-TSH-1 — **Sue E. Myerscough**, *Judge.*

ARGUED FEBRUARY 14, 2020 — DECIDED JUNE 18, 2020

Before RIPPLE, SYKES, and SCUDDER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Kevin Schaul pleaded guilty to five counts of health care fraud in violation of 18 U.S.C. § 1347. He now challenges his conviction, submitting that his guilty plea was not knowing and voluntary because he never was informed of the elements of the offense.

The indictment gave Mr. Schaul sufficient notice of the charges. However, he was informed erroneously of the mens

rea required by the statute; such an affirmative misrepresentation of the elements of the offense constitutes plain error. We conclude nevertheless that this error did not affect Mr. Schaul's substantial rights. The record affirmatively demonstrates that he knowingly *and* willfully violated the law. We therefore affirm the judgment of the district court.[1]

## I.

## BACKGROUND[2]

Mr. Schaul owned and operated ChildRite Medical Supply, a business that participated in the Medicaid program by suppling incontinence supplies for special-needs individuals. From August 2009 to September 2013, Mr. Schaul submitted claims for reimbursement to the Illinois Department of Healthcare and Family Services, which reimburses the cost of certain medical supplies provided to eligible individuals through Medicaid. Although Mr. Schaul reported that ChildRite had delivered roughly four million units during the years in question, approximately one million of those units did not exist. He obtained $582,844.10 from Medicaid for those nonexistent items.

A grand jury indicted Mr. Schaul for five counts of health care fraud under 18 U.S.C. § 1347. The indictment charged that Mr. Schaul

---

[1] The jurisdiction of the district court was predicated on 18 U.S.C. § 3231. Our jurisdiction is secure under 28 U.S.C. § 1291.

[2] The district court adopted the factual findings of the presentence report. R.76 at 6. The parties do not dispute the facts.

> knowingly devised and participated in a
> scheme to defraud Medicaid … and to obtain
> Medicaid funds by means of material false
> statements, pretenses, representations, and
> promises. As part of the scheme, Defendant
> Schaul, through ChildRite, repeatedly submit-
> ted and caused to be submitted false and
> fraudulent Medicaid claims … for the delivery
> of incontinence products that he represented
> had been provided to Medicaid recipients …
> when in fact, as Defendant Schaul well knew,
> no such products had been delivered or had
> not been delivered in the amount claimed.[3]

Mr. Schaul, who was represented by counsel during all pro-
ceedings in the district court, entered into a written plea
agreement. The agreement contained language describing a
"scheme to defraud Medicaid" that was substantially identi-
cal to the one described in the indictment.[4] The agreement
also stated that Mr. Schaul's counsel had "fully explained"
to him the indictment and the charges and that Mr. Schaul
fully understood the nature and elements of the crimes to
which he was pleading guilty.[5]

The plea agreement erroneously stated, however, that,
under § 1347, the Government needed to prove beyond a
reasonable doubt that the defendant "knowingly *or* willfully

---

[3] R.1 at 3–4.

[4] *Compare* R.39 at 12–13, *with* R.1 at 3–4.

[5] R.39 at 3.

executed or attempted to execute the scheme [to defraud]."[6] The statute requires the Government to prove that the defendant acted "knowingly *and* willfully." 18 U.S.C. § 1347(a) (emphasis added). Specifically, the statute provides in relevant part:

> (a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—
>
>> (1) to defraud any health care benefit program; or
>>
>> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be [punished] …
>
> (b) With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section.

§ 1347.

Mr. Schaul entered his guilty plea at a hearing before a magistrate judge. He agreed with the Government's factual

---

[6] *Id.* (emphasis added). The plea agreement defined "knowingly" as indicating that "the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident." *Id.* at 4. It did not define "willfully."

allegations. He stated that he had had sufficient time to discuss the charges with counsel and had done so; that he understood the charges against him; that he had no questions about the nature of the charges; and that he was satisfied with his counsel's representation.[7] When counsel for the Government explained the elements of the offense, he read from the plea agreement, which, as we have noted, incorrectly stated the mens rea required to violate § 1347.[8]

In due course, after accepting the guilty plea, the district court sentenced Mr. Schaul to twenty-four months' imprisonment followed by three years of supervised release and ordered him to pay $582,844.10 in restitution. Mr. Schaul timely appealed. After his trial counsel filed a motion to withdraw, Mr. Schaul filed a pro se motion to delay the date of his reporting to the Bureau of Prisons. The district court denied the motion; Mr. Schaul filed a motion to reconsider and stated, for the first time, that he could "prove … there was no intent to commit fraud."[9] The district court denied the motion for reconsideration.

## II.

## DISCUSSION

### A.

Mr. Schaul submits that his guilty plea was invalid because it was not entered knowingly and voluntarily as re-

---

[7] R.75 at 7–8, 10.

[8] *Id.* at 8.

[9] R.69 at 2.

quired by Rule 11 of the Federal Rules of Criminal Proce-
dure.[10] Because Mr. Schaul did not move to withdraw his
plea at the district court, our review is for plain error. *United
States v. Vonn*, 535 U.S. 55, 58–59 (2002) (holding that "a de-
fendant who lets Rule 11 error pass without objection in the
trial court … has the burden to satisfy the plain-error rule").
Under that standard, we may reverse the judgment of the
district court only if we decide: (1) that an error occurred; (2)
that the error was plain; and (3) that the error affected the
defendant's substantial rights. *United States v. Olano*, 507 U.S.
725, 732 (1993); *United States v. Corona-Gonzalez*, 628 F.3d 336,
340 (7th Cir. 2010). If a court determines that these criteria
are satisfied, it may, in its discretion, reverse if the error "se-
riously affect[ed] the fairness, integrity or public reputation
of judicial proceedings." *Olano*, 507 U.S. at 732 (quotation
marks omitted).

---

[10] Rule 11 of the Federal Rules of Criminal Procedure ensures that a de-
fendant's plea is knowing and voluntary. Before the court accepts a
guilty plea, it must ensure that the defendant understands, among other
things, "the nature of each charge to which the defendant is pleading."
Fed. R. Crim. P. Rule 11(b)(1)(G). Further, before accepting a guilty plea,
"the court must address the defendant personally in open court and de-
termine that the plea is voluntary." *Id.* at (b)(2). *See United States v.
Pineda-Buenaventura*, 622 F.3d 761, 768 (7th Cir. 2010) (concluding that
Rule 11 was not satisfied when it was not clear that the defendant under-
stood the nature of the charge to which he pleaded guilty). Although
Mr. Schaul waived his right to appeal by pleading guilty, he is "entitled
to challenge his plea on knowledge and voluntariness grounds despite
the plea waiver." *United States v. Olson*, 880 F.3d 873, 880 (7th Cir. 2018).

**B.**

Mr. Schaul challenges the validity of his plea on two fronts. First, he contends that he did not receive sufficient notice of the nature of the charges against him because the Government never made clear whether it was charging him with a violation of § 1347(a)(1) or of § 1347(a)(2). Second, he submits that he was not apprised adequately that the statute required that he commit the crime knowingly and willfully.

The general principles governing our evaluation of both of these contentions are well-settled. Because a guilty plea waives important rights, it is valid only when it is entered "voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). A district court must ensure that the record adequately demonstrates that a defendant understands the nature of the charges against him, including the elements of the crime. *Id.*; *see Henderson v. Morgan*, 426 U.S. 637, 645 (1976). Within this general framework, we now turn to an examination of each of Mr. Schaul's specific contentions.

**1.**

Mr. Schaul first submits that he was not given adequate notice of the charge against him. As we noted earlier, he submits that the indictment failed to notify of the subsection of the statute he allegedly violated.

The principles governing our analysis of this contention are well-established. A defendant is entitled to understand the nature of each charge against him, including the elements of the crime. *Bradshaw*, 545 U.S. at 183. When there is

general confusion over the elements of the crime with which a defendant is charged, the resulting guilty plea cannot stand. *Bousley v. United States*, 523 U.S. 614, 618–19 (1998). A plea is invalid when the record reveals that neither the defendant, nor his counsel, nor the court correctly understood the essential elements of the crime with which the defendant was charged. *Id.*

This principle must be applied in a practical way. An indictment must notify the defendant of the nature of the charges against him, but it need not precisely mimic the words of the relevant statute.[11] "Indictments are reviewed on a practical basis and in their entirety"; their function is to provide enough factual allegations to "pin[] down the specific conduct at issue." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000).

Application of this principle to the present case requires that, as a first step, we set forth the elements of the statute underlying Mr. Schaul's conviction. An individual violates the health care fraud statute, 18 U.S.C. § 1347, by "knowingly and willfully execut[ing], or attempt[ing] to execute, a scheme or artifice" to either: (1) "defraud any health care benefit program" or (2) "obtain, by means of false or fraudulent pretenses, … money or property owned by, … any health care benefit program." § 1347(a)(1)–(2). Mr. Schaul contends that, because the indictment against him employed language from both subsections, he could not identify with sufficient precision the crime of which he was accused. In his view, § 1347(a) tracks very closely the language of the bank

---

[11] *United States v. Harvey*, 484 F.3d 453, 456 (7th Cir. 2007).

fraud statute, 18 U.S.C. § 1344,[12] and therefore should be interpreted along the same lines as that statute.[13] Mr. Schaul submits that because §§ 1347(a)(1) and (a)(2), like the two subsections of the bank fraud statute, are listed in the disjunctive, they constitute two distinct offenses.

In his view, because the two subsections "criminalize[] different behavior," the failure to specify the subsection with which he is charged renders it impossible for him to have proper notice of the elements of his offense.[14]

Our decision in *United States v. Harvey*, 484 F.3d 453, 456 (7th Cir. 2007), is instructive. There, the Government charged the defendant with violating 18 U.S.C. § 924(c)(1),

---

[12] The text of 18 U.S.C. § 1344, the bank fraud statute, is below. The words in italics are those that differ from 18 U.S.C. § 1347(a), the health care fraud statute.

> Whoever *knowingly* executes, or attempts to execute, a scheme or artifice —
>
> > (1) to defraud *a financial institution*; or
> >
> > (2) to obtain any of the moneys, *funds, credits, assets, securities,* or *other* property owned by, or under the custody or control of, *a financial institution*, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be [punished] … .

[13] *Cf. Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes, … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.").

[14] Appellant's Br. 17.

which makes it a crime to "use[] or carr[y] a firearm, or … in furtherance of any [violent or drug trafficking] crime, possess[] a firearm … ." Harvey contended that this subsection contained two separate offenses, separated by the disjunctive "or." He argued that, because the indictment contained a mix of the language of the two allegedly separate offenses, it was invalid. *Harvey*, 484 F.3d at 455–56. We concluded, however, that whether the statute was read to encompass two separate offenses or one, "the separate parts of § 924(c) criminalize similar behavior." *Id.* at 456. The indictment notified Harvey that he was "charged with what the statute as a whole aims to prevent: carrying a firearm that is closely connected to an underlying drug offense." *Id.* Similarly, here the indictment explained to Mr. Schaul that he was charged with executing a scheme to submit fraudulent Medicaid claims and pocket the money.

Mr. Schaul also submits that the two subsections of § 1347 contain different elements. Accepting Mr. Schaul's invitation to analogize the bank fraud statute to the health care fraud statute, we note that the comparison supports the Government's position. We have held, with respect to the bank fraud statute, that "where a statute defines two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count in order to adequately apprise the defendant of the government's intention to charge him under either prong of the statute." *United States v. LeDonne*, 21 F.3d 1418, 1427 (7th Cir. 1994). This was so even though the Government's use of mixed language from both subsections of the bank fraud statute "might have blurred the elements of the offense, and possibly confused [the defendant]'s understanding of the charge." *Id.*

Here, the indictment listed the statute under which Mr. Schaul was charged and provided factual particulars about the alleged wrongdoing. The indictment therefore provided sufficient notice that the Government charged him with having violated both subsections of the statute. *See United States v. Franklin*, 547 F.3d 726, 731 (7th Cir. 2008) (declining to reverse where an indictment both identified the statute under which the defendant was charged and provided "specifics about … the conduct that ran afoul of the statute").

**2.**

Mr. Schaul next submits that, even if he had notice of the *conduct* for which he was being charged, the Government affirmatively misrepresented the mental state that it was required to prove. This is plain error; as Mr. Schaul puts it, the Government "undersold [its] burden of proof."[15]

Throughout the proceedings, the Government stated Mr. Schaul had to "knowingly *or* willfully" commit the proscribed acts.[16] The statutory language requires, however, that a defendant act "knowingly *and* willfully." § 1347(a) (emphasis added). The Government acknowledges that Mr. Schaul must be informed of the correct mens rea requirement. It asks us, nevertheless, to place the responsibility on defense counsel to inform the defendant. It points out that both Mr. Schaul and his attorney represented that they

---

[15] Appellant's Br. 10.

[16] R.39 at 3 (emphasis added); *see* R.1 at 3 (charging that the defendant "*knowingly* devised and participated in a scheme to defraud Medicaid") (emphasis added).

had adequate time and opportunity to discuss the charges and had no questions about them. We may conclude, urges the Government, that Mr. Schaul was sufficiently apprised of the correct elements of the offense.

It is true that "[w]here a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." *Bradshaw*, 545 U.S. at 183. If Mr. Schaul had been provided with a copy of his indictment that contained a correct statement of the elements, that would "give rise to a presumption that the defendant was informed of the nature of the charge against him." *Bousley*, 523 U.S. at 618. Here, however, the Government did not simply neglect to state the elements of health care fraud; it affirmatively misrepresented them. According to both the written indictment and the statements made by the prosecution at the plea hearing, Mr. Schaul could be found guilty of health care fraud if he acted knowingly *or* willfully. Those affirmative statements were incorrect. Notably, moreover, neither the court nor defense counsel corrected the misstatement, and we see no reason to indulge in the fiction that Mr. Schaul's counsel did in private what all present failed to do in open court. If "neither [the defendant,] nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged … [the] plea [is] … constitutionally invalid." *Id.* at 618–19. When all parties involved in a plea hearing misapprehended the law, we will not place the burden of the mutual mistake on the defendant.

Nonetheless, we must remember that our review is for plain error. To prevail under this standard, Mr. Schaul must

show not only that an error occurred and that it was plain, but also that it affected his substantial rights. *See Corona-Gonzalez*, 628 F.3d at 340. Only then may we remedy an error that "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (quotation marks omitted).

Given the case law, it is evident that, under the circumstances here, a failure to set forth the elements of the charged offense—including the crucial element of the mental state required to violate the statute—is plain error. However, Mr. Schaul cannot show that such an error affected his substantial rights. "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Mr. Schaul has offered no more than an assertion that he might have calculated his strategy differently had he been informed of the nature of his charges.[17]

More importantly, it is clear that Mr. Schaul *did* act knowingly *and* willfully in violating the health care fraud statute, which

> makes it a crime to "knowingly and willfully execute[ ], or attempt[ ] to execute, a scheme or

---

[17] Mr. Schaul asserts that "[t]here is a reasonable probability that Mr. Schaul would have 'assessed his strategic position differently' had he realized that the government was required to prove his intent to defraud." Appellant's Br. 26 (quoting *United States v. Sura*, 511 F.3d 654, 662 (7th Cir. 2007)).

> artifice: ... (1) to defraud any health care benefit
> program; or ... (2) to obtain, by means of false
> or fraudulent pretenses, representations, or
> promises, any of the money or property owned
> by, or under the custody or control of, any
> health care benefit program, in connection with
> the delivery of or payment for health care ben-
> efits, items, or services."

*United States v. Davis*, 471 F.3d 783, 785 n.1 (7th Cir. 2006) (al-
terations in original) (quoting 18 U.S.C. § 1347). Mr. Schaul
does not contest that he acted knowingly, but he argues that
he lacked the "intent to defraud."[18] We have said that "in-
tent to defraud … requires a specific intent to deceive or mis-
lead." *United States v. Natale*, 719 F.3d 719, 741 (7th Cir. 2013).
It is evident, however, that Mr. Schaul's conduct meets this
definition.

In the plea agreement, Mr. Schaul stipulated to certain
facts, including that over the course of at least four years, he
"knowingly devised and participated in a scheme to defraud
Medicaid … and to obtain Medicaid funds by means of ma-
terial false statements … [and] representations."[19] He sub-
mitted numerous false claims for products that he represent-
ed had been provided to Medicaid recipients but, "as [he]
well knew," no such products had been delivered.[20] He also
admitted that as part of the scheme he had converted the

---

[18] Appellant's Br. 26.

[19] R.39 at 12.

[20] *Id.* at 12–13.

funds received from fraudulent claims to his own personal use.

Mr. Schaul therefore has admitted facts that establish that his violation of the health care statute was both knowing *and* willful. He submitted false claims to Medicaid for products that were never delivered, fraudulently obtaining Medicaid funds that he put to personal use. It is clear that he intended to defraud Medicaid, and indeed did, to the tune of over half a million dollars. Although the district court erred in allowing a misstatement of the elements of the offense to stand uncorrected, this error was of no consequence because Mr. Schaul has admitted facts that make clear that his violation was willful. The error, therefore, had no effect on his substantial rights, and Mr. Schaul has not met the standard for reversal under plain error review.

## Conclusion

The indictment adequately informed Mr. Schaul of the Government's charge. Although the district court plainly erred in letting stand a misstatement of the requisite scienter, Mr. Schaul's own statements demonstrate that the offense was committed both knowingly and willfully. Therefore, we affirm the judgment of the district court.

AFFIRMED